In the Matter of the supervised
ESTATE OF Lawrence W.
INLOW, Deceased.

Inlow Children, Appellants,

v.

The Personal Representative of
the Estate of Lawrence W.
Inlow, Appellee.

No. 29A05–9907–CV–319.

Court of Appeals of Indiana.

Sept. 6, 2000.

Ronald E. Elberger, George T. Patton, Jr., Bose McKinney & Evans LLP, Marvin J. Frank, Robert M. Hamlett, Frank & Kraft, A Professional Corporation, Indianapolis, Indiana, Attorneys for Appellants.

Thomas A. Withrow, C. Daniel Yates, B. Keith Shake, Henderson, Daily, Withrow & DeVoe, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary [1]

Appellants Jason L. Inlow ("Jason"), Heather N. Johnson f/k/a Heather N. Inlow, Jeremy H. Inlow, and Karen E. Inlow as guardian for Sarah C. Inlow, a minor, (collectively, "the Inlow children") appeal the trial court's award of $750,000 in interim attorney fees to the law firm of Henderson, Daily, Withrow & DeVoe ("Henderson Daily") for legal services provided to Karl L. Kindig ("Kindig") as the personal representative of the supervised estate of Lawrence W. Inlow ("Inlow"). We reverse and remand.

### Issues

The Inlow children raise four issues for review, which we consolidate and restate as follows: [2]

I. whether the trial court erred in awarding interim attorney fees to Henderson Daily for preparing and defending the reasonableness of its fee petition;

II. whether the trial court otherwise erred in determining the amount

---

1. Oral argument in this cause was heard on June 8, 2000, in Indianapolis. We commend both parties for their excellent written and oral presentations.

2. In his appellate brief, Kindig summarily renews his December 16, 1999, motion to dismiss the Inlow children's appeal on the grounds of an untimely praecipe, which this court denied on January 11, 2000. "While this Court has the power to revisit prior decisions of its own, it should only do so in the case of extraordinary circumstances." *In re Train Collision at Gary, Indiana*, 654 N.E.2d 1137, 1140 n. 1 (Ind.Ct.App.1995), *trans. denied*. Because Kindig has "failed to set forth any reason why we should set aside our order" denying his motion to dismiss, we shall address the Inlow children's appeal on its merits. *See id.* (denying appellees' challenge to this court's order reinstating appeal).

of Henderson Daily's interim attorney fees; and

III. whether the trial court erred in awarding Henderson Daily attorney fees because it had no written fee agreement with the estate.

### Facts and Procedural History

Inlow was a partner at Henderson Daily when he accepted an offer of employment with Conseco, Inc. ("Conseco") in 1986. At the time of his death in a helicopter mishap on May 21, 1997, Inlow was an executive vice president and general counsel of Conseco. Inlow died intestate, leaving a gross estate of approximately 180 to 185 million dollars, and was survived by a former wife and four children from his first marriage, as well as a wife and child from his second marriage. On May 30, 1997, the trial court appointed Jason, Inlow's son from his first marriage, as personal representative of the estate. On June 2, 1997, Jason resigned his appointment and nominated as his successor Marvin J. Frank ("Frank"), whom the trial court subsequently appointed as successor personal representative.

On June 4, 1997, Anita C. Inlow, Inlow's second wife, filed an emergency verified petition to stay Frank's authority and sought the appointment of Kindig as successor personal representative pursuant to her statutory preference as Inlow's surviving spouse.[3] On that date, the trial court appointed Kindig as successor personal representative; Kindig was Inlow's longtime friend and had been a partner at Henderson Daily before joining Conseco in 1992 as a senior vice president in the legal department. To represent his interests as personal representative of the estate, Kindig retained several attorneys from

Henderson Daily, who immediately began determining and marshaling the assets of Inlow's sizable estate. On behalf of the estate, Henderson Daily also investigated the possibility of a wrongful death action against the helicopter manufacturer.[4]

On June 13, 1997, the trial court appointed Jason as co-personal representative of the estate, and Jason retained separate counsel to represent his interests. Jason and Kindig were unable to agree on estate-related issues, and on October 15, 1997, the trial court issued an order directing them to show cause why they should not be removed as co-personal representatives. On October, 21, 1997, Jason moved to disqualify Henderson Daily for its alleged conflict of interest as counsel for both Kindig and Conseco. After a show cause hearing, the trial court removed Jason as co-personal representative and ordered Kindig to serve as the sole personal representative on November 13, 1997. After a subsequent hearing, the trial court denied Jason's motion to disqualify on December 23, 1997. In the meantime, Jason and his counsel had filed petitions for fees and costs, to which Kindig objected on the basis of excessive rates, duplication of effort, and billing for work performed for the personal benefit of Jason and his siblings. On May 8, 1998, the trial court issued a detailed order on the pending attorney fee petitions, in which it reduced some of the hourly rates charged by Jason's counsel and pared thousands of dollars from their fee petitions for double billing and work performed for the personal benefit of the Inlow children.

On October 15, 1998, Kindig filed a petition for allowance of attorney fees and authority to make partial payment, which contained the following language:

---

3. *See* IND.CODE § 29-1-10-1(a) (order of persons to whom letters of general administration may be granted).

4. On December 5, 1997, the trial court appointed a special master to investigate and recommend whether the estate should elect to receive $300,000 of insurance proceeds in

exchange for releasing Conseco and its affiliates from liability for Inlow's death. The trial court subsequently ruled that it would not order Kindig to accept the insurance proceeds. On December 8, 1998, the trial court appointed a special administrator with exclusive responsibility for wrongful death issues.

Based upon the foregoing, Henderson Daily believes that a fair and reasonable fee for its services rendered to the Personal Representative, commensurate with all of the factors noted above and assuming no further unanticipated difficulties or circumstances, is One Million Nine Hundred Thousand Dollars ($1,900,000). Based upon the inclusion in this petition of those services performed for the Personal Representative from the date of Mr. Inlow's death until June 30, 1998, Henderson Daily estimates that under twenty percent (20%) of the tasks customarily required of a personal representative remain to be completed and, accordingly, requests that a partial payment of attorney fees in the amount of eighty percent (80%) of the total reasonable fee, or One Million Five Hundred and Twenty Thousand Dollars ($1,520,000) be made at this time.

On January 21, 1999, Kindig supplemented his petition with attachments "disclosing the tasks and time incurred, by lawyer or legal assistant, by day, in connection with work performed on the Inlow Estate beginning May 21, 1997 through and including November 30, 1998."

On January 25, 1999, the Inlow children filed a brief opposing Kindig's petition, in which they asserted that

the total fees, based on Henderson Daily's *highest specialty hourly rate* for services rendered from the inception of the Estate through November 30, 1998, only amount to Five Hundred Nineteen Thousand Four Hundred Ninety One Dollars ($519,491.00) -- *less than one-third* the outrageous, unconscionable and unreasonable fee requested. Otherwise stated, Henderson Daily, to the detriment of the decedent's heirs, is seeking not only a premium hourly rate for routine and customary services but a

significant triple multiplier thereof which is both unwarranted and unreasonable.

Pursuant to Indiana Trial Rule 52,[5] the Inlow children also requested the court to enter findings of fact and conclusions of law in its ruling on Kindig's petition. After two days of hearings, the trial court approved an interim payment of $750,000 in attorney fees to Henderson Daily on January 29, 1999. After several additional hearings, the trial court issued its findings of fact, conclusions of law, and judgment on Kindig's petition on June 18, 1999. The trial court's judgment reads in relevant part as follows:

### FINDINGS OF FACT . . .

18. As a result of the extraordinary size and unique character of the Estate, many decisions generally considered to be routine in estate administration were more difficult and complex in this Estate. For example, Counsel engaged in considerable research and consulted with advisors to determine the Estate tax year which would most benefit the heirs. Other complex issues addressed by Counsel include the determination of whether a joint or married-filing-separate return should be filed for 1997, whether any restrictions existed on the Estate's ability to sell Conseco stock due to Mr. Inlow's status as a former executive officer of Conseco, the preparation of death tax returns, and the valuation of Conseco stock and stock options held by Mr. Inlow at his death, including the application of a blockage discount for estate tax purposes. Numerous significant and complex tax issues, both estate and income, have arisen in the Estate, which Counsel in coordination with other professionals has appropriately addressed. . . .

---

**5.** Indiana Trial Rule 52(A) reads in relevant part, "Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury . . . shall find the facts specially and state its conclusions thereon."

26. In addition to the matters discussed herein, Counsel researched numerous other legal issues and took numerous actions to further the interests of the heirs of the Estate. Counsel provided appropriate and continual attention to Estate matters and did so by committing its firm's resources to the preclusion of other work and the development of new firm clients.

27. Counsel for the Personal Representative accepted employment herein notwithstanding the responsibilities and risks inherent in representing an estate of this size and complexity, as reflected in the complexity of the issues presented in this administration. The law firm as [sic] counsel for the Personal Representative in spite of the litigious and sometimes acrimonious nature of the Estate proceedings. The responsibilities and risks were present for Counsel and their law firm even without any evidence of errors or omissions on its part in the conduct of the administration of the Estate and in legal representation of the Personal Representative.

28. The Court took judicial notice of the proceedings that have occurred before it in this case and is cognizant of the nature and significance thereof. The Personal Representative's Counsel and their firm have thoroughly and appropriately represented their client in all proceedings and filings before this Court. Their efforts have reflected a high level of skill, ability, competency and thorough preparation.

29. The Estate administration has proved to be extraordinarily adversarial in nature, due in part to the disharmony among Mr. Inlow's heirs. This situation and its attendant results have required Counsel to expend considerable time and resources preparing for and attending contested hearings on a multitude of subjects.

30. The size of the Estate has also contributed to its complexity and its extraordinary nature, and has required Counsel to consider a variety of complex legal issues and to utilize the services of tax, investment and accounting professionals on a daily basis. The Personal Representative and Counsel have strategically and successfully assembled a team of professionals to prudently address all tax and investment issues as they arise.

31. Because of the circumstances of Mr. Inlow's death, Counsel have also been required to research and investigate a potential wrongful death claim on behalf of the Estate. The multi-jurisdictional implications of the potential claim and the legal theories and anticipated defenses required Counsel to engage in substantial research and to consult with attorneys of other jurisdictions.

32. As a result of the complexity of the issues, the acrimony and disharmony among the heirs and Personal Representative(s) and the substantial amount of contested proceedings which have already occurred in this Estate, the law firm and its attorneys have assumed significant personal and professional responsibilities and risks in accepting their role as counsel for the Personal Representative of the Estate.

33. As a result of the significant time spent in administering the Estate, the law firm and counsel for the Personal Representative have foregone other opportunities to devote immediate and substantial attention to other client matters, as well as to the development of new business and clients.

34. Having represented that he and his counsel have completed more than eighty percent (80%) of the tasks to be addressed in this Estate by June 30, 1998, Mr. Kindig filed his Petition seeking an interim award of attorney's fees for services performed in the sum of $1,520,000.00, and a total attorney fee award of $1,900,000.00 for all work to comp[l]ete this Estate, assuming no "unanticipated difficulties or circumstance[s]," although such are unspecified

in the Petition. Although [Hamilton County] Local Probate Rule 11.6 requires that all petitions for attorney's fees set forth "all services performed in detail as well as the amount of the fee requested and how it has been calculated," Mr. Kindig, upon filing his Petition, failed or neglected to show how the fee request was calculated.

35. Four (4) days before the hearing on the Petition commenced, Mr. Kindig as Personal Representative and his Counsel, belatedly filed a "Supplement to Petition for Allowance of Attorneys' Fees and Authority to Make Partial Payment," submitting therewith its time and task reports from the time period from May 21, 1997, through November 30, 1998. Counsels' time and task reports for December, 1998, and January and February, 1999, however, were not supplied until March, 1999, during the last three days of the hearing. Applying the specialty hourly rates for work performed by the law firm's partners, and the flat rates charged for most of their associates and for all of the firm's non-attorney staff to the hours performed by each such person in the firm who worked on this estate from May 21, 1997, through the end of February, 1999, discloses that the total fee for services rendered, on an hours worked times hourly rate basis is $705,247.50, without any consideration being given to the application of the criteria as set forth in Rule 1.5(a) of the *Rules of Professional Conduct,* applicable case law and this Court's own guidelines....

38. The hourly rates reflected in Counsel's time and task reports for the time spent by the law firm's personnel rendering services to the Estate are the highest specialty rates charged by that law firm and include not only the attorneys who are either partners or associates, but also other staff categories such as paralegals, legal assistants, and summer associates, the latter of whom are assigned a flat rate by the law firm....

45. Mr. Kindig never entered into a written agreement with his Counsel, or their law firm, concerning a reasonable fee for their legal services as attorneys for the Personal Representative.

46. The time and task reports of Counsel reflect an unusually large number of hours being devoted to the Petition for Fees which was the subject of this Hearing. Work on the Petition commenced on December 1, 1997, but began in earnest in June, 1998, and continued through the completion of the Hearing. Approximately 900 total hours [were] expended concerning the Fee Petition. The expert testimony was divided as to whether counsel should charge for the preparation of a Fee Petition; however, such a large number of hours seems clearly excessive, even where the amount of attorney fees was likely to be contested....

48. Although counsel for the Inlow Children assert numerous examples of double-billing, plus billing for work contracted to other counsel, accounts, and other third-parties, this Court cannot conclude that the numerous conferences and reviews and meetings go beyond normal prudence in an estate of this size and enter the arena of "duplicate billing."

49. This Court's Attorney Fee Guidelines, nor does case law, nor does Rule 1.5 of the *Rules of Professional Conduct* limit attorney fees to an hourly calculation....

### CONCLUSIONS OF LAW

1. The statutory authority for this Court to award attorneys' fees in a probate estate is [Indiana Code Section] 29-1-10-13 which provides, in relevant part:

> An attorney performing services for the estate at the instance of the personal representative shall have such compensation therefor[ ] out of the estate as the court shall deem just and reasonable....

4. Additionally, this Court has adopted its own guidelines for determining the amount of a just and reasonable fee. *See* Maximum Fee Guidelines for Supervised Estates ("Guidelines"), prepared by the Probate Committee of the Indiana Judicial Conference and as modified and adopted by this Court in Hamilton County Local Probate Rule 11.6.

5. The Guidelines provide that attorney fees for the performance of gross estate services (excepting extraordinary services) for a gross estate of greater than $1,000,000.00 should not exceed one percent (1%) of the value of the estate. . . .

8. In the case of estates requiring extraordinary services, the Guidelines provide for an award of an extraordinary fee request. Extraordinary services include:

sale of personal property, sale of real property, partial distribution, will contest actions, contesting claims, adjusting tax matters, contested hearings, petitions for instructions, heirship determinations, generating additional income for the estate, etc. . . .

9. This Court's fee guidelines clearly express the Court's intention that the schedule is a *maximum fee schedule*. Moreover, the guidelines clearly state that "attorneys are urged to discuss their fee and that of the personal representative at the time they are retained. . .," a discussion which both the Personal Representative and Counsel acknowledge did not take place. . . .

11. This Court has previously expressed its concerns with respect to fee requests submitted by attorneys representing Jason L. Inlow during the time Mr. Inlow served pursuant to the Court's appointment as Co–Personal Representative. Those concerns fell into three principal categories: (1) the hourly rates charged or sought to be charged by certain attorneys; (2) the likelihood that inter-attorney conferences represented or might represent a form of duplication of effort and/or double billing; and (3) the amount of time expended and sought to be charged for the sole purpose of supporting counsel's request for fees and preparation for hearings in connection with their fee requests. As it pertains to the current hearing, the Court is also concerned whether it is able to determine, in reviewing the time and task reports of Counsel and their law firm, what parts of conferences and which items being researched or addressed or attended in fact was a duplication.

12. The Court notes that no issue has been raised, nor any challenge made, with respect to the specialty hourly rates charged for by the Personal Representative's attorneys or to the flat hourly rates of their law firm's employees. Indeed, the interested parties have acknowledged that those rates including the so-called specialty rates are fair and reasonable.

13. Based on the size of the Estate, the complexity of the issues involved in its administration, the responsibilities and risks inherent in administering an estate of this size and complexity, the adversarial and acrimonious nature of the Estate administration, and the expenditures of time and resources by the Counsel, this Court determines that an interim fee of $750,000.00 is just and reasonable and appropriately reflects the time and work involved in the administration of the Estate through February, 1999.

14. The interim fee is appropriate despite the fact that it exceeds the number of hours already incurred by its attorneys in administering the Estate, since Counsel have been confronted with complex and difficult issues in a litigious and acrimonious atmosphere.

15. Under other circumstances, a higher fee for services to date might be appropriate (See this Court's Guidelines); however, other fees have been paid to other experts for services that

might otherwise have been paid to the Personal Representative's Counsel and substantial fees have already been paid to Co–Personal Representative's Counsel for legal services rendered to the Estate.

16. The Court is concerned by the amount of time expended by the Personal Representative's Counsel in support of its fee request and believes it is excessive. The Court cannot say precisely how much time was in fact expended on the fee request. The Court noted in its previous order that [Jason's counsel] had expended 42 hours "with the sole purpose of supporting their request for fees and in preparation for hearings in connection with their fee requests." Such hours cannot be used to award a multiple of the hourly rate. However, after deleting the excessive hours expended for the Fee petition, but taking into account the other findings of the Court, this Court remains convinced that the $750,000.00 interim fee is appropriate.

On July 6, 1999, the Inlow children initiated this appeal by filing a praecipe for the record of proceedings.[6] On December 16, 1999, Kindig moved to dismiss the appeal as untimely, asserting that the trial court's January 29, 1999, order awarding $750,000 in attorney fees was an appealable interlocutory order under Indiana Appellate Rule 4(B)[7] and was thus a mandatory appeal. Rejecting Kindig's interpretation of Indiana Appellate Rule 4(B) under *Trojnar v. Trojnar*, 698 N.E.2d 301 (Ind.1998), this court denied his motion to dismiss "on the basis that the administration of a decedent's estate is a single proceeding and accordingly, alleged error in the awarding of attorney's fees in the administration of an estate need not be appealed as a final judgment unless the trial court has made the determination and direction expressly required by Trial Rule 54(B)." *See Matter of Estate of Newman*, 174 Ind.App. 537, 544–46, 369 N.E.2d 427, 431–32 (1977).

## Discussion and Decision

### *Standard of Review*

The Inlow children urge us to review the trial court's judgment *de novo* as a pure question of law. *See Wayne Metal Products Co. v. Indiana Dep't of Environmental Mgmt.*, 721 N.E.2d 316, 317 (Ind.Ct.App.1999) ("Appellate courts review questions of law under a *de novo* standard and owe no deference to a trial court's legal conclusions."), *trans. denied.* We agree that the question of whether a trial court may award fees to a personal representative's attorney for preparing and defending a fee petition is a purely legal question of first impression that we must address *de novo*. However, in reviewing the trial court's determination of the amount of the fee, we are bound by the following standard:

[W]hen a party has requested specific findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. In reviewing the judgment, we must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. The court's findings and judgment will not be reversed unless clearly erroneous. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences from the evidence to support them. The judgment is clearly erroneous when it is unsupported by the findings of fact. In making these determinations, we will

---

6. On October 5, 1999, in response to the Inlow children's allegations that he engaged in ex parte communications with opposing counsel, the trial judge denied these contentions but recused himself from the cause and ordered the parties to select a special judge pursuant to Indiana Trial Rule 79(H).

7. Appellate Rule 4(B) reads in relevant part as follows: "Also, appeal from interlocutory orders shall be taken to the Court of Appeals in the following cases: (1) For the payment of money[.]"

neither reweigh the evidence nor judge witness credibility, but we will consider only the evidence favorable to the judgment and all reasonable inferences therefrom.

*Sans v. Monticello Ins. Co.,* 718 N.E.2d 814, 818–19 (Ind.Ct.App.1999) (citations omitted), *trans. denied.*

Special findings must contain all facts necessary to recovery by a party and the ultimate facts from which the court has determined the legal rights of the parties. The purpose of special findings is to provide parties and reviewing courts with the theory upon which the court's determination was made, thereby preserving the right of review for error. A court on review must determine whether the specific findings are adequate to support the trial court's decision. The findings are adequate if they disclose a valid basis under the issues to support the result reached in the judgment.

*Matter of Estate of Kroslack,* 570 N.E.2d 117, 121 (Ind.Ct.App.1991) (citations omitted). "However, we may reverse a trial court's judgment only if its findings constitute prejudicial error. A finding of fact is not prejudicial to a party unless it directly supports a conclusion of law adverse to him." *Riehle v. Moore,* 601 N.E.2d 365, 369 (Ind.Ct.App.1992) (citations omitted), *trans. denied.*

### I. Award of Fees for Proving Reasonableness of Fees: "Fees for Fees"

The threshold question raised by the Inlow children is whether the trial court erred in awarding Henderson Daily fees for the time it devoted to preparing and defending the reasonableness of its fee petition. As previously mentioned, Indiana Code Section 29–1–10–13 governs compensation of an attorney retained by the personal representative of an estate and reads in relevant part as follows:

An attorney performing *services for the estate* at the instance of the personal representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable....

(Emphasis added). This section in essence provides that, where a testator does not provide for the compensation of the personal representative and the attorney performing services for the estate, the trial court is authorized to award reasonable fees. *Ford v. Peoples Trust and Sav. Bank,* 651 N.E.2d 1193, 1194 (Ind.Ct.App. 1995), *trans. denied.* "The amount of fees to be awarded is within the trial court's discretion and will not be disturbed absent an abuse of discretion. Moreover, we have recognized the trial court's particular expertise in determining the value of the services rendered." *Id.* (citations omitted).

In determining a "reasonable fee," the trial court may consider many factors, including the labor performed, the nature of the estate, difficulties in recovering assets or locating devisees, and the peculiar qualifications of the administrator. *Id.* In addition, the trial court may consider the following guidelines for determining legal fees set out in the Indiana Rules of Professional Conduct:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Ind. Professional Conduct Rule 1.5.

 This case presents an issue of first impression in Indiana: whether preparing and defending the reasonableness of a fee petition qualify as "services for the estate" under section 29–1–10–13. Generally, in construing a statute we will only interpret a statute that is ambiguous. *Ballard v. State,* 715 N.E.2d 1276, 1279–80 (Ind.Ct.App.1999). This court may not interpret the meaning of a statute that is clear and unambiguous on its face. *Moshenek v. Anderson,* 718 N.E.2d 811, 813 (Ind.Ct.App.1999). "A statute is ambiguous when it is susceptible to more than one interpretation." *Ballard,* 715 N.E.2d at 1280. When a statute is ambiguous, we are "compelled to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and difficulty and prefer public convenience." *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs.,* 693 N.E.2d 972, 974 (Ind.Ct.App.1998). In our interpretation, we must be mindful of the purpose of the statute and the effect of such an interpretation. *Id.* Further, in interpreting the statute, we will read the statute as a whole, attempting to give effect to all provisions so that no section is held meaningless if it can be reconciled with the rest of the statute. *Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n of Rural Elec. Coops., Inc.,* 693 N.E.2d 1324, 1327 (Ind.Ct.App.1998). The legislature's definition of a word binds us; however, "when the legislature has not defined a word, we give the word its common and ordinary meaning." *Id.* "Further, we presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.*

Few states have addressed the question before us. However, there is case law supporting both sides. The Inlow children contend that "services for the estate" as used in Indiana Code Section 29–1–10–13 does not include preparing and defending the reasonableness of a fee petition, citing *Estate of Larson,* 103 Wash.2d 517, 694 P.2d 1051 (1985) and *In re Sloan Estate,* 212 Mich.App. 357, 538 N.W.2d 47 (1995).

In *Larson,* several heirs objected to the personal representative's final report and petition for distribution because they considered the requested attorney fees of $23,145 to be excessive. After a hearing, the commissioner found the attorney fees to be reasonable and awarded additional fees and costs incurred by the attorneys in defending the original request. The objectors sought review of the commissioner's decision, and the superior court judge approved both the original request and the commissioner's assessment, and also allowed additional fees and costs to the attorneys for resisting the motion for review. The Washington Court of Appeals affirmed the trial court's ruling. The Washington Supreme Court then reviewed both the reasonableness of the original fee and the propriety of assessing additional fees against the estate to prove the reasonableness of the challenged fees.

The *Larson* court noted that part of the attorneys' time spent preparing to meet the original objections was included in the original fee request. The commissioner awarded an additional $10,000 in attorney fees for time spent preparing to meet the objections and for trial on the reasonableness of the original fee request. The court set aside the $10,000 award, holding that "attorneys in probate are not entitled to an additional fee out of the estate in proving the reasonableness of their fees." *Id.* 694 P.2d at 1053. The court agreed with the objectors that such an award "violates public policy by penalizing victimized parties from legitimately challenging attorney fee requests in probate proceedings." *Id.* at 1059. The court reasoned that "[i]n defending a challenge to a requested attorney fee in a final report in probate, the attorney is a real party in interest," and thus, the time spent and fees incurred in defending the objections served only the

attorneys' interests and was of no benefit to the estate. *Id.* "Indeed, under the trial court ruling, the value of the estate was reduced in direct proportion to the amount the court increased the attorney fee." *Id. See also In re Estate of Halas,* 159 Ill.App.3d 818, 111 Ill.Dec. 639, 512 N.E.2d 1276, 1285 (1987) ("Time spent preparing or litigating the fee petition does not benefit the estate and will not be allowed.") (citing *Larson* ).[8]

In *Sloan,* the Michigan Court of Appeals considered whether the state's probate statutes allowed for "payment from an estate of attorney fees and costs incurred in establishing and defending a petition for attorney fees," an issue of first impression in Michigan. 538 N.W.2d at 48. The relevant Michigan probate statutes provided that "a fiduciary of an estate may employ counsel to perform necessary *legal services in behalf of the estate,*" Mich. Comp. Laws § 700.543 (emphasis added), and that "[a]n attorney is entitled to receive reasonable compensation for *services rendered to an estate,* in an amount approved by the judge...." MCR § 8.303 (emphasis added). Michigan appellate courts had consistently held, both before and after the enactment of section 543, that "legal services rendered in behalf of an estate are compensable where the services confer a benefit on the estate by either increasing or preserving the estate's assets," *Sloan,* 538 N.W.2d at 49, and the court noted that the attorneys had failed to establish that their fee-related services were beneficial to the estate. Thus, the court held that section 543 "does not include compensation for the ordinary fees and costs arising out of the need to establish and defend a petition for attorney fees." *Id.* at 50. The court rea-

soned that, because "fees for fees" claims are brought on behalf of the attorney seeking the fees, they do not increase or preserve the estate's assets. Instead, "the ordinary fees and costs incurred in establishing and defending a fee petition are inherent in the normal course of doing business as an attorney, and the estate may not be diminished to pay those fees and costs." *Id.* at 49. The *Sloan* court also noted the public policy reasons for such a rule: "routine allowance of such claims might inhibit a beneficiary or other interested person from raising valid objections to fee petitions out of concern that the estate's assets will be diminished." *Id.* at 50.

Conversely, claiming that "fees for fees" should be considered a part of the "just and reasonable compensation" allowed probate attorneys under section 29–1–10–13, Kindig cites *In re Estate of Trynin,* 49 Cal.3d 868, 264 Cal.Rptr. 93, 782 P.2d 232 (1989). California Probate Code Section 910 provides that attorneys for personal representatives "shall be allowed fees from the estate for conducting the ordinary probate proceedings and 'such further amount as the court may deem just and reasonable for extraordinary services.' "[9] *Id.* 264 Cal. Rptr. 93, 782 P.2d at 232. The California Supreme Court addressed whether the fees allowed under that section include compensation for time reasonably spent to establish and defend the attorney's own fee claim, and concluded that it did authorize courts to award such compensation. *Id.* 264 Cal.Rptr. 93, 782 P.2d at 233. In California, an attorney is compensated by a percentage of the estate's value for conducting the "ordinary probate proceed-

---

**8.** Kindig attempts to distinguish *Larson* on the basis that the court therein determined that the probate attorneys had breached their fiduciary duties to the estate. However, a careful reading of *Larson* clearly establishes that the court did not limit its holding so narrowly as to hold that *only* in the case of a breach of fiduciary duty is the probate attorney precluded from recovering additional fees incurred in proving the reasonableness of his fee: "[a]n estate attorney must assume the burden of

proving that the hours charged to the estate were both reasonable and necessary." 694 P.2d at 1060. Thus, even if the probate attorneys in *Larson* had proved that their original fee request was reasonable, the cost of proving it would have still been theirs to bear.

**9.** Indiana has no comparable "extraordinary services" provision.

ings." Fees for "extraordinary services," however, are determined in the exercise of judicial discretion by what amount is "just and reasonable" for those services.[10] The California courts have not focused exclusively on the benefit to the estate from the services rendered in fixing compensation, but look also to whether the attorneys were " 'acting in consonance with the fiduciary duties imposed upon them.' " *Id.* 264 Cal.Rptr. 93, 782 P.2d at 235 (quoting *Ludwig v. Superior Court,* 217 Cal. 499, 19 P.2d 984 (1933)).

The *Trynin* court noted the unique character of fee claims in estate proceedings: although the fee award is statutorily authorized, as in many other cases, it is unlike those other cases in that the probate statute does not shift the fee from the successful litigant to the opposing party. *Id.* 264 Cal.Rptr. 93, 782 P.2d at 236. The court most closely analogized probate fee claims to bankruptcy fee claims: in both cases, the fee is set by the court and paid out of an estate. *Id.* 264 Cal.Rptr. 93, 782 P.2d at 238. In bankruptcy, "fees for fees" are allowed as "actual, necessary expenses," 11 U.S.C. § 330(a)(1), because fees are statutorily authorized, and preparation of a fee petition is statutorily required. Considering all this, the court held that although "fee litigation confers no immediate or direct benefit on the estate, it becomes a necessary incident to the attorney's work for the estate, and so compensable, when unjustified challenges are raised to a fee claim." *Trynin,* 264 Cal. Rptr. 93, 782 P.2d at 238. Thus, section 910 was held to include work reasonably performed by an attorney to establish and defend a fee claim. The court noted its own public policy reason for the rule: "a contrary rule would effectively deny full and fair compensation to attorneys and thereby discourage qualified and competent counsel from undertaking to perform extraordinary services for ... decedents' estates." *Id.*[11]

 Having thus laid out the respective arguments and supporting authority, we turn our attention to the instant case. Although both the trial court and the parties focus on the propriety of charging fees for preparing a fee petition, rather than for defending its reasonableness, these issues may be considered two sides of the same coin. We first address whether an attorney may recover fees for preparing a fee petition under section 29–1–10–13. To be paid, an attorney must first tell a client what he owes. Requiring a client to pay an additional amount for being told what he owes in the first instance is neither good business nor good law. The preparation of a fee petition, as of any billing statement, is clearly a service performed for the attorney seeking to be paid, rather than a service performed for the estate. Thus, time spent preparing the fee petition is a routine cost of doing business that must be factored into an attorney's hourly rate, as is universally done with non-probate clients, and cannot be considered a separate expense to be subsidized by the estate as part of the compensation awarded pursuant to section 29–1–10–13.

Kindig warns against the dangers of "diluting" the value of a fee award by disallowing "fees for fees" and asserts that Henderson Daily "expended extraordinary time and resources in properly administering the Estate" and "engaged in a thor-

---

10. Indiana also has no comparable "percentage of the estate" provision. *See Matter of Estate of Meguschar,* 511 N.E.2d 307, 311 (Ind.Ct.App.1987) (noting that probate attorney fees "must bear a reasonable relation to the amount of services actually rendered and the reasonable value of the services" and "cannot be arrived at solely by the application of a percentage formula to the value of the gross estate."), *trans. denied.*

11. The court also noted that, simply because award of such a fee was included in section 910 does not mean that an additional award of fees for fee-related services is always required. If the court concludes that amounts previously awarded for both ordinary and extraordinary services are adequate to fully compensate the attorney, denial of a request for fee-related fees is appropriate. *Id.* 264 Cal.Rptr. 93, 782 P.2d at 239.

ough review of time and task reports which were presented to the trial court in support of Henderson Daily's fee petition." We acknowledge that the administration of an especially complex estate may require an attorney to devote more time than is usually necessary to preparing a fee petition, but the necessity for expending such time and effort will usually be apparent at the outset of the representation and should be reflected in any fee agreement into which the parties enter. Moreover, a conscientious attorney with the expertise to administer such an estate will also be experienced at efficiently tracking and billing for time spent performing various services for the estate. If due diligence is exercised in keeping track of time as it is spent, hundreds of hours should not be required to prepare even a lengthy fee petition. In fact, the burden of preparing a fee petition for sizable estates may even be lessened where, as here, probate attorneys "farm out" many of the complicated tax, securities, and accounting issues to outside experts and simply receive a bill for their services.

We likewise conclude that section 29–1–10–13 prohibits a probate attorney from seeking fees from the estate or a party for defending the reasonableness of a fee petition. Again, such a "service" is a routine cost of doing business and must be factored into an attorney's hourly rate. In the case of a meritorious challenge to a fee petition, defending its reasonableness cannot seriously be considered a service "for

the estate," especially if the challenge results in a reduction of the proposed fee. We recognize, however, that acrimony and litigiousness occasionally rear their ugly heads during estate administration and that probate attorneys may have to defend their fee petitions against baseless challenges brought by contentious heirs or legatees. An attorney may recover fees in such cases under Indiana Code Section 34–52–1–1(b) if the court finds that the complaining party

> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.[12]

Kindig fears that prohibiting "fees for fees" will discourage "competent attorneys ... from providing services necessary to the proper administration of the estate"; on the contrary, we are confident that competent attorneys who wish to avoid meritorious fee petition challenges will prudently enter into written fee agreements[13] with personal representatives and scrupulously document the nature and duration of the services they perform for their respective estates.

In sum, we hold that Indiana Code Section 29–1–10–13 prohibits the recovery of attorney fees from the estate or a party

---

**12.** In determining whether a fee petition challenge is litigated in bad faith or is sufficiently "frivolous, unreasonable, or groundless" to warrant the shifting of fees under section 34–52–1–1, the trial court may consider the following factors, which are not intended to be an exhaustive list: (1) whether a fee agreement exists; (2) whether the fee petition is calculated pursuant to or closely follows the fee agreement; (3) whether the fee petition is sufficiently specific and demonstrates not only the time spent and fees incurred but also the specific tasks performed to allow a reasonable determination of whether the fees are warranted and reasonable; and (4) whether events have occurred during the administration of the estate which have significantly

altered the premise upon which the fee agreement was originally based. If the attorney does not enter into a fee agreement, as here, or does not calculate his fees pursuant to the agreement, then the attorney accepts the risk that he will have to defend his fee petition at his own expense.

**13.** Hamilton County Local Probate Rule 11 provides, "Where contracts for legal services have been entered into prior or subsequent to the opening of an estate or guardianship, the Court reserves the right to approve or disapprove the fee contracts consistent with this Court's fee guidelines."

for preparing or defending the reasonableness of a probate fee petition.[14] We therefore reverse and remand with instructions to deny Henderson Daily's request for fees derived from preparing and defending its interim fee petition. Subtracting these charges may prove a herculean task due to Henderson Daily's failure to specify and the trial court's inability to precisely determine the hours and rates billed for preparing and defending the petition.[15] We address the issue of fee determination in greater detail below.

## II. Trial Court's Determination of Attorney Fees

The Inlow children further challenge the trial court's overall determination of Henderson Daily's fee. They assert that most of Henderson Daily's work for the estate was "routine and ordinary"; that Henderson Daily engaged in double billing; that it should not have been compensated for its work on wrongful death issues; that the trial court should not have considered risk as a factor in awarding compensation; and that the trial court should not have used a lodestar-multiplier in determining Henderson Daily's fee.

### A. "Routine and Ordinary" Services

■■■ The Inlow children claim that most of the tasks performed by Henderson Daily in administering the estate were "routine and customary services expected to be provided in any probate estate." Their arguments are essentially requests for us to reweigh evidence, which is not within our prerogative on appeal. *See*

*Sans*, 718 N.E.2d at 819. In its findings, the trial court noted that the Inlow children had not challenged the hourly rates charged by Henderson Daily, and that it had calculated Henderson Daily's "total fee for services rendered, on an hours worked times hourly rate basis [at] $705,247.50 without any consideration being given to the application of the criteria as set forth in [Professional Conduct Rule 1.5(a) ], applicable case law and [the trial court's] own guidelines." As discussed below, however, the trial court's failure to demonstrate its application of these criteria prevents a meaningful review of its order, thereby necessitating reversal and remand for greater specificity.

### B. Double Billing

■■■ The Inlow children contend that the trial court erred in awarding fees to Henderson Daily for "four attorneys participating in the fee hearing (including one sitting in the gallery billing), three attorneys attending depositions, while yet others reviewed the same depositions, and other unnecessary, overlapping, and duplicative services," such as conferences with and reviews of documents prepared by outside experts. Indiana courts have not addressed double billing in any detail, but we find the following description to be sufficiently instructive in the probate context:

> Although employment of multiple attorneys by a personal representative is viewed with disfavor, whether additional

---

14. Our holding does not prohibit probate attorneys from recovering fees for defending a will contest under Indiana Code Section 29–1–7–17, which obviously qualifies as a service for the estate. Nor does our holding preclude trial courts from implementing the fee-shifting provisions of Indiana Code Section 34–52–1–1 for "frivolous, unreasonable, or groundless" fee-petition challenges or for challenges brought in bad faith.

15. It is curious to note that Henderson Daily asserts the following in its brief: "This acrimony and litigiousness further necessitated Henderson Daily's attention to each and every detail of the Estate proceeding because each

issue, regardless of how minute, would likely be the subject of later litigation." Unfortunately for both parties and the trial court, however, Henderson Daily's attention to detail did not extend to preparation of its time and task reports, which fail to specify the amount of time attorneys spent on substantive legal matters versus strictly ministerial tasks such as preparation of the fee petition. As discussed below, the time and task reports were also sufficiently vague to frustrate the trial court's attempt to determine whether Henderson Daily billed for unnecessary duplication of effort.

legal counsel may properly be employed at the expense of the estate depends ultimately on the facts and circumstances of the individual case.

However, the number of attorneys employed is not a determination [*sic*] factor in fixing the fee to be allowed. Indeed, where more than one attorney is unnecessarily employed by the representative, no more can be allowed for such attorneys' services than would amount to reasonable compensation if only one were employed, and in such case the single reasonable compensation allowed must be divided among the several attorneys rendering services.

34 C.J.S. *Executors and Administrators* § 262 (1998) (footnotes omitted).

Kindig observes that the trial court found it "[could] not conclude that the numerous conferences and reviews and meetings go beyond normal prudence in an estate of this size and enter the arena of 'double billing.'" However, he fails to mention that the trial court also concluded that it was "concerned whether it [was] able to determine, in reviewing the time and task reports of Counsel and their law firm, what parts of conferences and which items being researched or addressed or attended in fact was a duplication."

We are troubled that the trial court was able, in the Inlow children's words, to "itemize and mathematically quantify the reduction" for double billing by Jason's counsel, but was unable even to determine *whether* Henderson Daily had done so. The trial court's conclusion number 11 is simply not supported by its finding number 48, which is hardly surprising given the conflicting testimony adduced at the hearing and the vagueness of Henderson Daily's time and task reports. Although we recognize that the participation of more than one attorney is reasonable in certain instances, and that determination of attorney fees is a matter of trial court discretion, we conclude that remand is proper where the trial court acknowledges that the fee petition itself does not permit a reasoned determination of whether there was unnecessary duplication of effort leading to double billing. To assist its determination on remand, the trial court may order Henderson Daily to show cause why it cannot submit more detailed time and task reports, or it may hold additional hearings on this particular issue. Should the trial court find any instances of unnecessary duplication of effort, it must deduct such charges from Henderson Daily's fee award.

### C. Wrongful Death

■ Next, the Inlow children claim that because Henderson Daily's efforts to "explore possible [wrongful death] claims against the helicopter manufacturer and seller" produced "no lawsuit, no settlement, and ... no benefit to the Estate," the trial court erred in awarding fees therefor. They further argue that "it would be inappropriate to consider" such an award "unless and until a recovery is in fact made" by counsel selected by the special administrator for wrongful death issues. Kindig correctly notes the "lack of authority for either of these propositions" and observes that the special administrator's counsel have "requested and received all of the documents and information assembled by Henderson Daily, including its research regarding wrongful death issues" and "have on several occasions sought advice and information ... regarding such wrongful death work." Thus, he contends, the wrongful death work performed by Henderson Daily benefited the estate. Regardless of whether the estate ultimately receives a money judgment against the helicopter manufacturer from a wrongful death suit, we conclude that Henderson Daily's work on this issue constitutes services for the estate meriting "just and reasonable compensation" under Indiana Code Section 29–1–10–13.

### D. Risk as Factor for Fee Determination

■ Finally, the Inlow children contend that the trial court erred in consider-

ing risk as a factor in awarding fees to Henderson Daily, adding that the estate "is not and should not be an insurer for, nor indemnifier of, any malpractice or misfeasance on the part of either [Kindig] or his counsel." They further note that neither Professional Conduct Rule 1.5 nor the trial court's fee guidelines lists risk as a factor and that only in the context of a written contingent fee agreement is risk "an acknowledged and accepted factor." *See* Ind. Professional Conduct Rule 1.5(c) (contingent fee requirements). They also point to a lack of precedent for compensation of probate attorneys "on the basis of an explicit multiplier of the lodestar – the attorneys' time expended times the attorneys' hourly rates."

The Inlow children's indemnification argument is well taken, but we note that Professional Conduct Rule 1.5 does not specifically exclude risk as a permissible factor in determining the reasonableness of attorney fees. Additionally, risk may assume more than one form; as Kindig observes, an attorney's potential malpractice exposure in performing services for a large estate may exceed the limits of the policy. To be sure, an attorney would voluntarily accept an offer of employment from and be required to provide competent representation to the personal representative in such a case, but we cannot say as a matter of law that a trial court would abuse its discretion in considering this risk in determining a just and reasonable fee.

### E. Use of Lodestar–Multiplier in Determining Fee

■■■■ As for the trial court's alleged use of a lodestar-multiplier in determining Henderson Daily's fee award, we are unable to conclude from the trial court's order whether it actually did so. In the lodestar method of calculating fees, the number of hours reasonably expended on a case is multiplied by a reasonable hourly rate. *Community Care Centers, Inc. v. Indiana Family and Soc. Servs. Admin.*, 716 N.E.2d 519, 550 (Ind.Ct.App.1999), *trans. denied.* Under the lodestar-multi-

plier method, a court first calculates the "lodestar" as described above, and then the court may enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Citizens Action Coalition of Indiana, Inc. v. PSI Energy, Inc.*, 664 N.E.2d 401, 404 n. 1 (Ind.Ct.App.1996). The burden of proving that an upward adjustment is necessary for a reasonable fee is on the fee applicant. *Kellogg v. City of Gary*, 562 N.E.2d 685, 717 (Ind.1990). The criteria listed in Professional Conduct Rule 1.5(a) are to be considered in determining the reasonable hourly rate for calculation of the lodestar, and should not also be used to justify the application of a multiplier. *See Shell Oil Co. v. Meyer*, 684 N.E.2d 504, 526–27 (Ind.Ct.App.1997), *aff'd in relevant part*, 705 N.E.2d 962 (Ind. 1998).

■■■ Here, the trial court first calculated the number of hours worked multiplied by the applicable hourly rates at $705,-247.50, then subtracted an unknown number of "excessive" hours relating to "fees for fees," and finally either applied the criteria listed in Professional Conduct Rule 1.5(a) and/or its own guidelines, or used a multiplier to arrive at $750,000 as a proper interim fee. The trial court did not make findings or conclusions sufficient to allow us to determine exactly how it arrived at such a fee, and inasmuch as we cannot even determine whether a multiplier was in fact applied, we do not reach the question of whether the use of such a multiplier is appropriate in the probate context in general or in this case specifically. Because the trial court's findings fail to disclose a valid basis for its determination of the fee, *see Kroslack*, 570 N.E.2d at 121, we remand this cause with instructions to enter findings of fact and conclusions of law sufficiently detailed to disclose the basis for the judgment, taking into account the issues decided by this opinion.

### III. Lack of Written Fee Agreement

Although the Inlow children fail to demonstrate reversible error on this issue, we

note that Professional Conduct Rule 1.5(c) provides that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation." Henderson Daily may have had past dealings with Kindig as a former partner of the firm and as an employee of its client Conseco, but the firm had never represented Kindig as personal representative of an estate and belatedly submitted time and task reports in support of its fee petition. Henderson Daily may not have avoided a challenge to its fee petition simply by executing a written agreement with Kindig, but we are frankly unconvinced by Henderson Daily's explanation that it had been too busy administering the estate to do so. *See* Prof. Cond. R. 1.5 cmt. ("A written statement concerning the fee reduces the possibility of misunderstanding.").

In summary, we reverse the trial court's award of $750,000 in attorney fees to Henderson Daily and remand with the following instructions:

(1) to hold further hearings or require Henderson Daily to submit time and task reports sufficiently detailed to enable the trial court to determine the number of hours spent performing services for the estate and the hourly rate charged for these services;

(2) to subtract any charges related to preparing the fee petition or defending its reasonableness;

(3) to subtract any charges for unnecessary duplication of effort in providing services for the estate;

(4) to determine a just and reasonable fee for Henderson Daily's services pursuant to Indiana Code Section 29–1–10–13 and consistent with the criteria and precedent discussed above;

(5) to issue findings of fact and conclusions of law sufficiently detailed to disclose the basis for its judgment;

(6) should the resulting fee be less than $750,000, to order Henderson Daily to refund the balance to the estate plus an annual interest rate of eight percent (8%) pursuant to Indiana Code Section 24–4.6–1–101; or

(7) should the resulting fee be more than $750,000, to order the estate to pay the balance to Henderson Daily plus an annual interest rate of eight percent (8%).

Reversed and remanded.

DARDEN, J., and ROBB, J. concur.