942 N.E.2d 148 (2011)
In the Matter of the GUARDIANSHIP OF J.Y., an adult.
D.R., Individually and as Successor Trustee of the J.Y. Special Needs Trust, Appellant-Respondent,
v.
Carey Services, Inc., Guardian of the Person of J.Y., Appellee-Petitioner.
No. 27A02-1005-GU-744.
Court of Appeals of Indiana.
February 15, 2011.
Curtis E. Shirley, Indianapolis, IN, Attorney for Appellant.
Kyle C. Persinger, Spitzer Herriman Stephenson Holderead, Musser & Conner, LLP, Marion, IN, Attorney for Appellee.

OPINION
BAILEY, Judge.

Case Summary
D.R. appeals from the trial court's designation of Carey Services, Inc. ("Carey") as guardian of J.Y.'s person.
We affirm.

Issue
D.R. raises one issue for our review, which we restate as whether the trial court abused its discretion when it designated Carey as guardian of J.Y.'s person although Carey, a domestic nonprofit corporation, cannot serve as a domiciliary personal *149 representative of a deceased person's estate under Indiana law.

Facts and Procedural History
J.Y., who is sixty-five years old, has been adjudicated as incapacitated; though physically healthy, he has been diagnosed as mentally retarded and suffers from anxiety disorder, and cannot provide for his own personal care or financial management. Carey is a nonprofit corporation that specializes in support services for individuals with disabilities; it has provided daytime care for J.Y. since the 1960s, and began to provide additional support services at J.Y.'s home after J.Y.'s mother died in 2007. D.R. is J.Y.'s niece and is trustee of a special needs trust established for J.Y.
After an incident where J.Y. ran away from the home he shared with his sister and guardian, Willarose, on January 18, 2008, the Grant County Prosecutor and Indiana Adult Protective Services filed a petition for a hearing on Willarose's guardianship of J.Y. On January 23, 2008, the court ordered that J.Y. remain in Carey's care pending a hearing and decision on Willarose's continued service as J.Y.'s guardian. On March 31, 2008, Tia Brewer ("Brewer") was appointed J.Y.'s Guardian ad Litem ("GAL"). On April 15, 2008, the court reaffirmed Brewer's appointment as J.Y.'s GAL, appointed Carey as interim guardian of J.Y.'s person, and appointed STAR Financial Services ("STAR"), an Indiana financial services institution, as interim guardian of J.Y.'s estate. On October 20, 2008, STAR petitioned the court to remove Willarose as J.Y.'s guardian.
On May 1, 2009, D.R. filed a petition with the court seeking appointment as J.Y.'s permanent guardian of J.Y.'s estate. STAR filed a petition on June 3, 2009, requesting appointment as guardian of J.Y.'s estate and opposing D.R.'s petition. On June 23, 2009, Carey filed its petition for permanent guardianship over J.Y.'s person. D.R. objected to Carey's petition, requesting instead that she and her brother, Eric Yeley, be appointed as co-guardians of J.Y.'s person.
On July 7, 2009, Willarose submitted to the court her resignation as guardian of the estate and person of J.Y.; the court approved her resignation on July 10, 2009. A hearing on the appointment of permanent guardians was held on February 1, 2010, and February 2, 2010. On February 3, 2010, the trial court conducted an in camera interview with J.Y. After the hearing, the parties and J.Y.'s GAL submitted proposed findings and conclusions and supporting briefs. On April 19, 2010, the court entered its findings of fact, conclusions of law, and order, which appointed Carey as permanent guardian of J.Y.'s person and STAR as permanent guardian of J.Y.'s estate. D.R. remained trustee of J.Y.'s special needs trust.
This appeal followed.

Discussion and Decision

Standard of Review
D.R. challenges the trial court's appointment of Carey as J.Y.'s personal guardian. Appointment of a guardian is generally within the discretion of the trial court. We therefore review a trial court's appointment of a guardian, whether of an individual's estate or of an individual's person, for an abuse of discretion. In re Guardianship of Atkins, 868 N.E.2d 878, 883 (Ind.Ct.App.2007), trans. denied. Where, as here, the claimed abuse of discretion arises from an alleged error in statutory interpretation or other matter of law, we review the decision of the trial court de novo. In re Guardianship of Hollenga, 852 N.E.2d 933, 937 (Ind.Ct. *150 App.2006).[1]

Relationship of the Probate and Guardianship Statutes
Because D.R. grounds her argument in the substantive provisions of the Probate Code and guardianship statutes, we must first consider the relationship between and applicable statutory provisions of each body of law before we reach the merits of D.R.'s appeal.
Indiana Code section 29-3-5-1 sets forth the procedure governing petitions for the appointment of a guardian, stating in relevant part that "[a]ny person may file a petition for the appointment of a person to serve as a guardian." I.C. § 29-3-5-1(a) (emphasis added). A court must "appoint as guardian a qualified person or persons most suitable and willing to serve," taking into account the protected person's wishes, those of a spouse or individual acting on behalf of the protected person under a durable power of attorney, and the best interests of the protected person and his property. I.C. § 29-3-5-4 (emphasis added). The statutes also set forth a priority listing for individuals who may be considered for appointment as a guardian, but a court may disregard any individual with priority if such is in the best interests of the protected person. I.C. § 29-3-5-5.
The guardianship statutes define "guardian" as "a person who is a fiduciary and is appointed by a court to be a guardian or conservator responsible as the court may direct for the person or the property of an incapacitated person or minor." I.C. § 29-3-1-6 (emphasis added). The statutes define "person" to include not only natural persons (as "individuals") but also numerous other legal entities, including nonprofit corporations. Ind.Code § 29-3-1-12.
The crux of the matter before us is whether a nonprofit corporation may constitute a qualified person under section 29-3-5-4. The guardianship statutes do not define "qualified" as it appears in section 29-3-5-4, or "fiduciary" as it appears in section 29-3-1-6. While the guardianship statutes incorporate many of the procedural and substantive provisions of the Indiana Probate Code, Ind.Code 29-1-1 et seq., among the provisions not specifically adopted under the guardianship statutes are the Probate Code's definitions in section 29-1-1-3, including the Probate Code's definition of "fiduciary" at section 29-1-1-3(10) and "person" at section 29-1-1-3(20). I.C. § 29-3-2-6(b) (stating in relevant part "IC 29-1-1-6 through IC 29-1-1-7 . . . apply to guardianships under this article"). Nowhere is "qualified" defined in either body of law, except to require that guardians execute and file bonds unless a court permits otherwise, and to restrict from guardianship appointment persons who have been convicted of committing certain sexual offenses. I.C. § 29-3-7-7 (Indiana Code 29-3-7 is titled "Qualification and Bonding Requirements for Guardians").
The issue before us today concerns the qualification of a non-profit such as Carey, which is not a corporate fiduciary, to serve as a guardian under Indiana law. Our research of Indiana law reveals no case dealing squarely with the question D.R. presents, whether a nonprofit corporation not also authorized as a corporate fiduciary may qualify as a personal guardian. Absent direct statutory guidance or other applicable case law on the key matter before us, we are left with a matter of statutory construction.

*151 Arguments of the Parties

Having set forth the interrelation of the guardianship and probate statutes, we turn now to the parties' arguments.
Though the guardianship statutes do not include the Probate Code's definitions within its own defined terms, D.R.'s interpretation of section 29-3-5-4's "qualified person" draws analogies to the Probate Code. The Probate Code defines a fiduciary as including a "personal representative, guardian, conservator, trustee, or person designated in a protective order to act on behalf of a protected person." I.C. § 29-1-1-3(a)(10). The Probate Code precludes from service as a domiciliary personal representative "a resident corporation not authorized to act as a fiduciary in this state."[2] I.C. § 29-1-10-1(b)(4). Thus, because the Probate Code understands a fiduciary to include a guardian, and because only a corporation that is an authorized corporate fiduciary may serve as a personal representative (which is also a fiduciary), D.R. concludes that Carey as a nonprofit corporation lacking authorized corporate fiduciary status cannot serve as a guardian under the guardianship statutes.
Carey, on the other hand, argues that anyonewhether a natural person or otherwisewho falls within the guardianship statutes' definition of person may serve as a guardian. Among those entities listed as a "person" within the guardianship statutes is "a nonprofit corporation." I.C. § 29-3-1-12. The provisions governing the appointment of a guardian never expressly define the term "qualified" as it appears in section 29-3-5-4. The statutes simply exclude individuals who have been convicted of certain criminal offenses and require bonding of those appointed to act as a guardian. Thus, Carey concludes that because any person as defined in section 29-3-1-12 may apply, because only certain persons are legally disqualified from service, and because those exclusions do not encompass nonprofit corporations not already authorized as corporate fiduciaries, Carey may serve as guardian of J.Y.'s person.
Each party brings matters of public policy to bear in their arguments. D.R. directs our attention to the potential for abuse of guardianship powers in many guardianship matters, conjuring a parade of horribles about the interference in the care of an individual by nonprofit organizations lacking "heart or soul." (Appellant's Br. 13.) D.R. also envisions minors, felons (except for certain sex offenders), and the incapacitated as guardians, since the guardianship statutes do not by their own terms exclude any of these categories, where the Probate Code does preclude such individuals from serving as personal representatives.[3] I.C. § 29-1-10-1(b)(1). Carey notes that nonprofit corporations are often so involved in the care of incapacitated persons as to be those persons' only real caregivers and link to the world, and expresses concern about the ability of organizations like itself to best serve the interests of a protected person without the ability to serve as a guardian.

Decision
Such policy considerations, though of great importance, are within the realm of concern of our Legislature, and such arguments are best directed there. Left with a *152 matter of statutory construction, our standard is well established.
Generally, in construing a statute we will only interpret a statute that is ambiguous. This court may not interpret the meaning of a statute that is clear and unambiguous on its face. A statute is ambiguous when it is susceptible to more than one interpretation. When a statute is ambiguous, we are compelled to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and difficulty and prefer public convenience. In our interpretation, we must be mindful of the purpose of the statute and the effect of such an interpretation. Further, in interpreting the statute, we will read the statute as a whole, attempting to give effect to all provisions so that no section is held meaningless if it can be reconciled with the rest of the statute. The legislature's definition of a word binds us; however, when the legislature has not defined a word, we give the word its common and ordinary meaning. Further, we presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals.
In re Estate of Inlow, 735 N.E.2d 240, 251 (Ind.Ct.App.2000) (internal quotes and citations omitted).
We find two considerations dispositive: 1) the purpose and conduct of a guardian when compared to the purpose and conduct of the personal representative in a probate proceeding; and 2) the Legislature's restrictions on who may serve as a guardian versus its restrictions on who may serve as a personal representative.
As to the purpose of a guardian when compared to the purpose of a personal representative in probate, we note that the primary purpose of probate is to close the deceased individual's estate "as promptly as possible." I.C. § 29-1-16-2. The personal representative of the estate of a deceased is to preserve the assets of the estate in order to distribute the assets of the estate completely and efficiently for the benefit of creditors and the deceased's heirs and devisees. Inlow v. Henderson, Daily, Withrow & DeVoe, 787 N.E.2d 385, 394-95 (Ind.Ct.App.2003), trans. denied. Trustworthiness with the assets of others and to carry out their expressed wishes are thus of paramount importance to the role of a personal representative. Court supervision of the personal representative begins with the opening of an estate, and ends with a final accounting. Many estates go largely unsupervised by a court, see I.C. 29-1-7.5-1 et seq. (authorizing unsupervised administration of probate), further highlighting the importance of trustworthiness in relation to the role of personal representative when dealing with others' property.
Guardians, however, may serve a number of purposes. A particular guardian's role in a guardianship may be purely financial in nature, purely personal in nature, or a combination of the two. I.C. § 29-3-8-1 (setting forth the responsibilities of a guardian subject to the limits expressed in the court order appointing the guardian); I.C. § 29-3-8-8(a)(3) (affording courts discretion in the creation of limited guardianships). Guardians who protect an individual's estate are required to submit an at-least biennial accounting of their use of the individual's assets, making court supervision of the guardian more regular. I.C. § 29-3-9-6(a)-(b) (requiring accounting on an at least biennial basis for most guardians and accounting within thirty days of the termination of a temporary guardianship). This differs from the role of the personal representative in probate, whose conduct of the estate of a deceased individual is permanent and final.
*153 Because the roles and level of supervision differ, it is logical that different sets of definitions and requirements were enacted by our Legislature to govern who may fill each role. We note again that the guardianship statutes expressly exclude the Probate Code's definition of person, setting forth a more detailed and seemingly comprehensive list that expressly includes nonprofit corporations without otherwise disqualifying such corporations in other substantive provisions. I.C. § 29-3-1-12.
More crucial to our analysis is the Legislature's decision to leave "qualified" undefined in the phrase "qualified person." Only two criteria are prescribed by statute for qualification as a guardian. One is that a guardian must post a bond unless a court decides such is unnecessary. I.C. § 29-3-7-1. The other is that certain sex offenders cannot serve as guardians. I.C. § 29-3-7-7. It is to the second qualification that we now turn.
In determining who may serve as a guardian, the Legislature has restrained a trial court's discretion only through its definition of "person" and the statutory provision disqualifying as guardians individuals who have committed certain sex offenses. That is, only those individuals who have committed one or more offenses within a limited subset of the broad range of felonies are excluded as a matter of law from serving as a guardian. By contrast, any felon is precluded from service as a personal representative. I.C. § 29-1-10-1(b)(3).
This leads us to the conclusion that a nonprofit corporation not authorized as a corporate fiduciary is not precluded from serving as a guardian. In enacting the restriction against sex offenders as guardians, the Legislature necessarily took into account other statutory provisions that might affect the qualifications of guardians. If the Legislature had intended to apply the Probate Code's limitations on who may serve as a personal representative to the definition of a "qualified person" as a guardian, it could have taken any number of courses of action: it could have duplicated the Probate Code's limitations within the guardianship statutes, defined "qualified" with reference to the applicable Probate Code, or included the Probate Code's definitions within the scope of the provisions the guardianship statutes specify are applicable to the conduct of guardianships.
Yet the Legislature did none of these. Instead, it expressly excluded only a subset of all felonsall of whom are restricted from service as a personal representative by separate provision in the Probate Codefrom service as guardians. To read the "qualified person" of the guardianship as requiring the same qualifications as a personal representative would require us to construe as a nullity or treat as mere surplusage section 29-3-7-7's restrictions upon sex offenders. This we will not do, as it risks treating provisions in the guardianship statutes to be of no effect by virtue of its reference to the Probate Code. Cf. Estate of Inlow, 735 N.E.2d 240, 251 (Ind.Ct.App.2000).
We acknowledge the attractiveness of D.R.'s approach, which seeks to permit only organizations that are also corporate fiduciaries to act as guardians. Nevertheless, the Legislature entrusted the courts with discretion to determine who should serve as a guardian, and circumscribed this decision with fewer limitations than it has the appointment of a personal representative.
We hold that the requirements of a personal representative are not the same as the requirements for a guardian, and that as a result a nonprofit corporation not authorized as a corporate fiduciary in *154 Indiana may serve as guardian where it could not serve as a personal representative. Because this is the only issue raised by D.R. before this courtD.R. does not argue that the court abused its discretion in any other way when it appointed Carey as guardian of J.Y.'s person[4]we conclude that the trial court was within its discretion to appoint Carey guardian of J.Y.'s person.
Affirmed.
NAJAM, J., and DARDEN, J., concur.
NOTES
[1] We note that the trial court entered findings and conclusions sua sponte. Because only a legal issue is raised before us, our de novo standard of review is unchanged.
[2] Section 29-1-1-3(a)(20) defines "person" as "natural persons and corporations."
[3] We note that D.R.'s argument ignores the consequences of her interpretation that corporate fiduciarieslike bankscould serve as personal guardians, as these organizations also have no "heart or soul." (Appellant's Br. 13.)
[4] In her briefs, D.R. expresses some doubt about the purity of Carey's motivation to seek personal guardianship over J.Y., suggesting financial considerations motivate Carey's actions. None of her statements rise to the level of a coherent argument or cite sufficient authority to warrant our consideration. See Ind. Appellate Rule 46(A)(8)(a) (requiring "cogent reasoning" and that "[e]ach contention. . . be supported by citations to the authorities, statutes, and the Appendix or parts of the Record"). We note further that D.R. is trustee of the special needs trust for J.Y.'s benefit and as such may challenge Carey's use of those funds if she has concerns with Carey's care for J.Y.