**AMERICAN HERITAGE BANCO, INC., Alan W. Sidel, and Sheila Schimmele, Appellants–Plaintiffs,**

v.

**Earl Ford McNAUGHTON, Pamela S. McNaughton, George McNaughton, Parkway Mission Industrial Accommodations LLC, MacNeachdain, Inc, Inveraray, Inc., Dunderade, Inc., Southern Indiana Historical Preservation, Inc, Batten Kill, Inc., Illmont Parked Properties, Inc., Anne M. Mounts, Ted W. Walter, Earlford Foy McNaughton, David G. Schimmele, Thomas L. Christlief, Neil L. Patterson, Harold A. Arndt, Carl Akers, Jr., William Roebel, James Penner, Freemont Plastics, Inc., Lyndon Tucker, John Pichon, Jr., and Richard Wells, Appellees–Defendants.**

No. 76A03–0706–CV–272.

Court of Appeals of Indiana.

Jan. 24, 2008.

Martin T. Fletcher, Sr., Daniel G. McNamara, David E. Bailey, Eilbacher Fletcher, LLP, Fort Wayne, IN, Attorneys for Appellants.

Debra H. Miller, James R. Fisher, Miller & Fisher, LLC, Indianapolis, IN, Attorneys for Appellees.

## OPINION

ROBB, Judge.

### Case Summary and Issue

American Heritage Banco, Inc., ("AHB") appeals the trial court's partial dismissal of its claims against Fremont Plastics, Inc., and Lyndon Tucker, contending the trial court erred in determining that AHB had failed to state a claim upon which relief could be granted. Concluding that the trial court properly dismissed AHB's claims for fraud and civil conspiracy to commit fraud, but improperly dismissed

AHB's claim for treble damages, we affirm in part and reverse in part.

*Facts and Procedural History*

The First National Bank of Fremont ("FNBF") was a wholly owned subsidiary of AHB from 1995 to 2005, at which time FNBF sold substantially all of its assets and liabilities to a bank in LaGrange, Indiana, and merged with AHB. AHB is a closely held corporation for which Earl McNaughton is the majority shareholder. McNaughton was also the president, chairman of the board of directors, and chief executive officer of FNBF. In 1997, FNBF gave Fremont Plastics [1] a $ 100,000 revolving line of credit. Tucker is the president of Fremont Plastics.

On September 28, 2001, Fremont Plastics drew $100,000 on its line of credit. On that same date, Tucker signed a promissory note to FNBF for $75,020. The proceeds from the Fremont Plastics draw and the Tucker loan were used to purchase a $175,000 cashier's check from FNBF, signed by Thomas Christlieb, vice-president, senior lender, and director of FNBF, payable to another FNBF customer who had an outstanding loan with FNBF.

On December 4, 2001, David Schimmele, vice-president of FNBF, signed a FNBF cashier's check from FNBF payable to John Pichon in the amount of $405,578.19. Pichon purchased another cashier's check in the amount of $151,481.61 with the proceeds of the first cashier's check. The proceeds from the second cashier's check were used on December 7, 2001, to pay down Fremont Plastics's loan by $75,326.03, and to pay off the Tucker loan.

When new management took over FNBF, the series of loan transactions described above was reviewed [2] and it was determined that the loans FNBF had made to Fremont Plastics and Tucker could not properly have been paid with proceeds from later loans. Accordingly, the entries reflecting that the Fremont Plastics and Tucker loans had been paid were reversed and the loans were reinstated as unpaid obligations.

AHB filed its Second Amended Complaint on October 26, 2006. Count III of the complaint asserts claims against Fremont Plastics and Tucker, among others, for the transactions described above. Specifically, AHB alleged:

112. Each of the defendants named in this Count acted together in a concerted effort to defraud FNBF through their respective roles in the fraud and schemes detailed above. FNBF suffered damages as a result of this concerted and unlawful activity.

113. FNBF was a state or federally chartered or federally insured financial institution. Each of the defendants named in this Count knowingly executed multiple schemes to obtain money from FNBF through false pretenses by participating in the transactions described in this Second Amended Complaint. FNBF suffered pecuniary loss as a result of the execution, or attempted execution, of the schemes. Defendants are therefore guilty of defrauding a financial institution, in violation of Ind.Code § 35–43–5–8. FNBF is entitled to bring a civil action to recover treble damages, costs, and fees for such pecuniary loss pursuant to Ind.Code § 34–24–3–1.

114. Each of the defendants in this Count, at a minimum, misrepresented the purpose of the transactions de-

---

1. In 1997, Fremont Plastics, Inc., was known as Hoosier Plastics, Inc.

2. Several other loan transactions not immediately involving Fremont Plastics and Tucker were also reviewed at this time and give rise to other claims in AHB's Second Amended Complaint.

scribed here, the true identity of the borrowers, and the source of repayment of the funds borrowed with intent to defraud. Each of the defendants named in this Count knowingly provided, endorsed, or supported false loan applications, supporting loan documentation, and payment information to allow for the funding of the loans. The defendants identified in this Count, knowingly and intentionally made false and misleading written statements with intent to obtain property, and misapplied entrusted property of a credit institution in a manner they knew was unlawful and involved substantial risk of loss or detriment to FNBF and AHB, which loss did occur. Such conduct constitutes criminal deception, in violation of Ind.Code § 35–43–5–3, and entitled FNBF to bring a civil action for treble damages pursuant to Ind.Code § 34–24–3–1.

115. Each of the defendants named in this Count knowingly and intentionally caused FNBF to suffer pecuniary loss through the deceptive and fraudulent scheme described above. Such conduct constitutes criminal mischief pursuant to Ind.Code § 35–43–1–2 and entitled FNBF to bring a civil action for treble damages pursuant to Ind.Code § 34–24–3–1.

116. Those defendants named in this Count who were FNBF officers breached their fiduciary duties to FNBF by their conduct as described here.

Appellant's Appendix at 66–67.

On November 21, 2006, Fremont Plastics and Tucker filed a motion to dismiss Count III of AHB's complaint, alleging that under the facts as pled, the fraud or deception required to show violation of one of the criminal statutes cannot exist because the actions "were induced by, and taken with express knowledge of, FNBF through Earl McNaughton, its president, chairman of the board of directors, and chief executive officer." *Id.* at 126. Fremont Plastics and Tucker contended that the knowledge of McNaughton and other corporate officers should be imputed to FNBF. *See id.* at 133–34. AHB filed a response, alleging not only that Count III states claims under the crime victims statute that withstand Trial Rule 12(B)(6) scrutiny, but also states a claim for unpaid promissory notes. Following a hearing, the trial court ordered, in part, that the motion to dismiss filed by Fremont Plastics and Tucker "shall be granted in part and denied in part. [AHB has] asserted enough factual allegations to justify proceeding further on [its] claim against Fremont Plastics, Inc. and Lyndon Tucker for unpaid promissory note or notes." *Id.* at 18. At Fremont Plastics and Tucker's request, pursuant to Trial Rule 54(B), the trial court entered an order expressly determining that there is no just reason for delay in the entry of final judgment and expressly directing that final judgment of dismissal be entered in favor of Fremont Plastics and Tucker on all claims under Indiana Code section 34–24–3–1 and all other claims, except the claim on an unpaid promissory note. *See id.* at 20. AHB now appeals.

*Discussion and Decision*

I.   Standard of Review

In reviewing a motion to dismiss granted pursuant to Trial Rule 12(B)(6), our standard of review is well-settled:

A 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. Therefore, we view the complaint in the light most favorable to the nonmoving party, drawing every reasonable inference in favor of that party. In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred

in its application of the law. The trial court's grant of a motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. In determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. Further, under notice pleading, a plaintiff need only plead the operative facts involved in the litigation.

*Godby v. Whitehead,* 837 N.E.2d 146, 149 (Ind.Ct.App.2006) (citations omitted), trans. denied. We review a trial court's grant of a Rule 12(B)(6) motion to dismiss de novo. *First Nat. Bank & Trust v. Indianapolis Pub. Hous. Agency,* 864 N.E.2d 340, 350 (Ind.Ct.App.2007).

## II. Legal Sufficiency of AHB's Claims

### A. Fraud and Conspiracy to Commit Fraud

■ AHB contends that Count III of its complaint states a claim for fraud and for civil conspiracy to commit fraud. We address the two together because civil conspiracy is not an independent cause of action.[3] *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1234 (Ind.1994). The essential elements of common law fraud are: 1) a material representation of past or existing facts which 2) was false 3) was made with knowledge or reckless ignorance of its falsity 4) was made with intent to deceive 5) was rightfully relied upon by the complaining party and 6) proximately caused injury to the complaining party. *Bilimoria Computer Sys., LLC v. America Online, Inc.,* 829 N.E.2d 150, 155 (Ind.Ct.App.2005). Actual fraud may

not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed. *Wallem v. CLS Indus., Inc.,* 725 N.E.2d 880, 889 (Ind.Ct.App.2000).

AHB's complaint alleges that Fremont Plastics obtained a line of credit from FNBF with the stated purpose of operating expenses, that Fremont Plastics drew on the line of credit for another purpose, and that the line of credit remains unpaid. AHB's complaint also alleges that Tucker signed a promissory note with the stated purpose of paying off a previous loan from FNBF, that the stated purpose was false and known to be false because there is no record of Tucker having another loan account with FNBF, and that as a result of the promissory note, FNBF made the loan to Tucker, and the loan remains unpaid. AHB contends these allegations are sufficient to state a claim for fraud.

■ We note first that the promissory note Tucker signed is attached to the complaint as an exhibit. The purpose of the loan stated therein is "CONSUMER: BUSINESS PURPOSES." Appellant's App. at 110, Exhibit F. This contradicts the allegation in the complaint that the stated purpose of the Tucker loan was to pay off a previous loan. A court should not accept as true allegations that are contradicted by other allegations in the complaint or exhibits attached to or incorporated in the pleading. *Ogden v. Premier Props., USA, Inc.,* 755 N.E.2d 661, 665 (Ind.Ct.App.2001). Accordingly, we do not accept AHB's characterization of the Tucker loan.

**3.** The cause of action is for damage resulting from a conspiracy. *Huntington Mortgage Co. v. DeBrota,* 703 N.E.2d 160, 168 (Ind.Ct.App. 1998). A civil conspiracy is defined as "a combination of two or more persons, by concerted action, to accomplish an unlawful pur- pose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Id.* Here, AHB alleges that the defendants acted in concert to obtain loans from FNBF by fraud.

■ AHB bases its allegations of fraud on the stated purpose and the true purpose of the Fremont Plastics and Tucker loans being different. Fremont Plastics obtained its line of credit with FNBF in 1997 with a stated purpose of "BUSINESS: OPERATING." Appellant's App. at 106, Exhibit E6. The draw in question did not occur until 2001. The purpose of Tucker's loan was "CONSUMER: BUSINESS PURPOSES." *Id.* at 110. The stated purpose of the loans is not a statement of past or existing fact, it is a promise of future conduct in the case of Fremont Plastics or a statement of existing intent in the case of Tucker. An action for fraud cannot be based on broken promises or statements of existing intent that are not executed. *Kopis v. Savage,* 498 N.E.2d 1266, 1272 (Ind.Ct.App.1986); *see also Sees v. Bank One, Indiana, N.A.,* 839 N.E.2d 154, 163 (Ind.2005) (holding that statement of bank agent at time guarantor signed guaranty that purpose of guaranty agreement was not to proceed against guarantor personally was not a statement of past or existing fact but a statement of present intention and bank's subsequent suit to enforce guaranty agreement did not make statement fraudulent). Accordingly, the trial court did not err in dismissing AHB's complaint for failure to state a claim for fraud and conspiracy to commit fraud.

### B. Treble Damages

■ AHB contends that Count III of its complaint states a claim for treble damages on three theories: bank fraud, criminal deception, and criminal mischief. The Indiana crime victim's relief act allows a person who has suffered a pecuniary loss as a result of a violation of certain criminal statutes to bring a civil action to recover up to three times the loss. Ind.Code § 34-43-1-2. A criminal conviction is not a condition precedent to recovery in a civil action brought under the Indiana crime victim's relief act. *Gilliana v. Paniaguas,* 708 N.E.2d 895, 899 (Ind.Ct.App.1999), *trans. denied.* However, all elements of the alleged criminal act must be proven by the claimant. *Id.* Unlike in a criminal trial, a claimant need prove only by a preponderance of the evidence that the criminal act was committed by the defendant. *Id.*

■ Fremont Plastics and Tucker contend as a threshold issue that AHB cannot prove any of the alleged crimes because FNBF officers' and employees' knowledge of and participation in the alleged schemes to defraud or deceive FNBF should be imputed to FNBF itself. Fremont Plastics and Tucker note the general rule that the actions and knowledge of employees and agents of a corporation are attributable to the corporation when the actions are done within the scope of employment. *See Mid–Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.,* 715 N.E.2d 906, 909 (Ind.Ct.App. 1999). As an exception to the general rule, if an agent commits an independent fraud for his own benefit, or acts adverse to the interest of the principal, he ceases to act as an agent and his knowledge will not be imputed. *Id.* at 910. In addition, "[k]nowledge will not be imputed to the principal in cases where the agent colludes with the person who claims the benefit of the principal's knowledge in a fraudulent scheme to defraud the principal." *Fed. Kemper Ins. Co. v. Brown,* 674 N.E.2d 1030, 1033–34 (Ind.Ct.App.1997), *trans. denied.* However, there is also an exception to the exception: "[w]here an adverse agent is also the sole representative of the principal in the transaction in question, the principal may once again be charged with the agent's knowledge." *First Nat'l Bank of Cicero v. Lewco Secs. Corp.,* 860 F.2d 1407, 1417 (7th Cir.1988); *see also In re Dublin Secs., Inc.,* 133 F.3d 377, 380 (6th

Cir.1997) ("[W]here the principal and agent are one and the same ... [the sole actor exception] imputes the agent's knowledge to the principal ... because the party that should have been informed was the agent itself albeit in its capacity as principal."), *cert. denied,* 525 U.S. 812, 119 S.Ct. 45, 142 L.Ed.2d 35 (1998).

It may be that McNaughton and other FNBF officers and employees had knowledge of Fremont Plastics and Tucker's allegedly bogus loan transactions that should be imputed to FNBF, as Fremont Plastics and Tucker contend. It may be that McNaughton and other FNBF officers and employees were acting adverse to FNBF and their knowledge should not be imputed to FNBF, as AHB contends. And it may be that McNaughton, as the majority shareholder, president, chairman of the board, and CEO, was both principal and agent and his knowledge should be imputed to FNBF even though he was acting adverse to FNBF's interests. However, determining the roles of the various players and whether knowledge should be imputed to FNBF requires going beyond the face of the complaint. At this stage of the proceedings, therefore, it is inappropriate to impute knowledge and conclude as a matter of law that AHB cannot show fraud or deceit. AHB alleges that the loan transactions were fraudulent and that they harmed FNBF. Taking those allegations as true, as we must, we cannot say that AHB's claims should be dismissed for failure to state a claim on the basis of imputed knowledge.

■ AHB alleged that Fremont Plastics and Tucker committed fraud on a financial institution in violation of Indiana

Code section 35–43–5–8, criminal deception in violation of Indiana Code section 35–43–5–3, and criminal mischief in violation of Indiana Code section 35–43–1–2. Fraud on a financial institution, as alleged by AHB, is defined as follows:

> A person who knowingly executes, or attempts to execute, a scheme or artifice ... to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises commits a Class C felony.

Ind.Code § 35–43–5–8(a)(2). Fremont Plastics and Tucker contend that AHB must prove the elements of common law fraud to prove a violation of this statute.[4] We disagree.

■ "In Indiana no common-law crimes exist, and the legislature fixes the elements necessary for any statutory crime." *Knotts v. State,* 243 Ind. 501, 504, 187 N.E.2d 571, 573 (1963). We may not read into a statute that which is not the expressed intent of the legislature. *Herron v. State,* 729 N.E.2d 1008, 1010 (Ind. Ct.App.2000), *trans. denied.* Criminal statutes cannot be enlarged by construction, implication, or intendment beyond the fair meaning of the language used. *Id.* The five elements of common law fraud are not found in the statute defining fraud on a financial institution. In fact, the statute directly contradicts one of the elements of common law fraud when it includes a false or fraudulent promise as a basis for criminal liability. Accordingly, we will not read

---

4. Fremont Plastics and Tucker focus on the reliance element of common law fraud and assert that AHB's claims fail because of the imputed knowledge of the corporation and the resulting lack of reasonable reliance. We have held that at this stage of the proceed-

ings, knowledge cannot be imputed and therefore Fremont Plastics and Tucker's specific argument fails; however, we must address this allegation because we have also determined that AHB has failed to state a claim for common law fraud.

the elements of common law fraud into the crime of fraud on a financial institution. *See McAdams v. State,* 226 Ind. 403, 409, 81 N.E.2d 671, 673 (1948) (considering defendant's claim that the common law definition of burglary requiring proof that crime was committed in the night time should be used in his prosecution rather than the definition fixed by statute omitting the night time requirement and holding that "the burglary statute here involved defines the crime, not in generic or general terms, but definitely and particularly, and it is not necessary or proper to look to the common law for additional elements necessary to constitute the crime which the legislature has, we may presume, deliberately omitted").

The statutory definition of fraud on a financial institution requires AHB to prove by a preponderance of the evidence that Fremont Plastics and Tucker knowingly executed a scheme to obtain money of a state or federally chartered or federally insured financial institution by false or fraudulent pretenses. AHB also alleges that Fremont Plastics and Tucker violated Indiana Code section 35-43-5-3(a), which defines deception as follows:

A person who:

* * *

(2) knowingly or intentionally makes a false or misleading written statement with intent to obtain property ...; [or]

(3) misapplies ... property of a credit institution in a manner that the person knows is unlawful ...

commits deception, a Class A misdemeanor.

AHB is therefore required to prove by a preponderance of evidence that Fremont Plastics and Tucker knowingly or intentionally made a false or misleading written statement to obtain money from FNBF or misapplied the money they received from FNBF in a manner they knew to be unlawful. Finally, AHB alleges that Fre-

mont Plastics and Tucker violated Indiana Code section 35-43-1-2(a), which defines criminal mischief as follows: "A person who ... knowingly or intentionally causes another to suffer pecuniary loss by deception ... commits criminal mischief, a Class B misdemeanor."

AHB's complaint alleges that Fremont Plastics and Tucker were involved with other defendants in a series of transactions in which they made false written representations on loan applications or promissory notes in order to obtain loans from FNBF, a state or federally chartered or federally insured financial institution; that they used the money they were loaned for unlawful purposes; and that FNBF suffered a pecuniary loss as a result. These facts, if proven, support a claim for relief under the treble damages statute for violation of one or more of the statutes defining the crimes on which AHB bases its claim.

### Conclusion

The trial court properly dismissed AHB's claims for fraud and conspiracy to commit fraud for failure to state a claim upon which relief could be granted, as the claims are based on statements of existing intent or broken promises for the future. However, AHB's complaint states a claim for recovery pursuant to Indiana Code section 34-43-1-2 under any of the three theories alleged and the trial court erred in dismissing this claim.

Affirmed in part and reversed in part.

KIRSCH, J., and BARNES, J., concur.