**Wayne HOUSE, Appellant–Plaintiff,**

v.

**FIRST AMERICAN TITLE COMPANY, Security Title Services, LLC, and The Centex Home Equity Co., LLC, f/k/a Centex Home Equity Corporation, Appellees–Defendants.**

No. 15A04–0708–CV–484.

Court of Appeals of Indiana.

March 31, 2008.

Douglas C. Holland, Lawrenceburg, IN, Attorney for Appellant.

Harley K. Means, Kroger, Gardis & Regas, LLP, Indianapolis, IN, Attorney for The Centex Home Equity Co., LLC.

David J. Barker, Barker Law Offices, Carmel, IN, Attorney for Security Title Services, LLC.

Frank G. Kramer, Patricia J. Coghill, Lawrenceburg, IN, Attorneys for First American Title Company.

## OPINION

MAY, Judge.

Wayne House appeals the dismissal of his complaint against First American Title Company, Security Title Services, and Centex Home Equity Company. We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

Centex foreclosed its mortgage on the home of Richard and Ginny Wykoff. Centex sold the home to House and issued a special corporate warranty deed dated August 23, 2004. House contracted with Security Title to perform a title search. Security Title reported there were no liens on the property, and House purchased title insurance from First American.

House made improvements to the property and attempted to resell it. A prospective buyer refused to close when a title search revealed two judgment liens on the property: one held by Provident Bank against the Wykoffs and another held by American Acceptance against Ginny Wy-

koff. Centex, Security Title, and First American refused to take action to clear House's title. Therefore, he filed suit against the Appellees.

The Appellees moved to dismiss House's complaint, and the trial court granted their motions. Meanwhile, a second prospective buyer discovered two additional judgment liens on House's property: one held by Aurora Elementary School against Richard Wykoff and another held by Dearborn County Hospital against the Wykoffs. House instituted a quiet title action at his own expense. Judge James D. Humphrey, who presided over the quiet title action, concluded "the judgment liens, pursuant to Indiana law, including the one owed to Dearborn County Hospital, continued to be liens against the real estate formerly owned by the" Wykoffs. (Appellant's App. at 78.)

House filed an amended complaint alleging each of the Appellees had breached its contractual duties. House also alleged First American committed unfair claim practices and he was entitled to treble damages because First American violated provisions of the Indiana Code. House attached to his complaint copies of the deed, the four judgments against the Wykoffs, and the insurance policy. The Appellees again moved to dismiss, and their motions were granted.

## DISCUSSION AND DECISION

Trial Rule 8(A) requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff must plead the operative facts involved in the litigation. *Miller by Miller v. Memorial*

*Hosp. of South Bend, Inc.,* 679 N.E.2d 1329, 1332 (Ind.1997). A motion to dismiss under Trial Rule 12(B)(6) tests the legal sufficiency of the complaint, and not the facts supporting it. *Thompson v. Hays,* 867 N.E.2d 654, 656 (Ind.Ct.App.2007), *trans. denied* 878 N.E.2d 210 (Ind.2007). The allegations and the reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party, here House. *Id.* The court may look only to the complaint and may not resort to other evidence in the record. *Godby v. Whitehead,* 837 N.E.2d 146, 149 (Ind.Ct.App.2005), *trans. denied* 855 N.E.2d 1005 (Ind.2006). The trial court should grant a motion to dismiss only if the "facts alleged in the complaint are incapable of supporting relief under any set of circumstances." *Id.* We review *de novo* the trial court's ruling on a motion to dismiss. *Thompson,* 867 N.E.2d at 656.

### 1. *Centex's Motion to Dismiss*

Centex conveyed the property to House by special warranty deed.[1] A warranty deed normally contains covenants of seisin, right to convey, freedom from encumbrances, quiet enjoyment, and warranty. *Windell v. Miller,* 687 N.E.2d 585, 588 (Ind.Ct.App.1997). If the usual covenants are limited, the deed is known as a "special warranty deed." *Id.*

Centex's deed contains only the covenant of warranty:

The Grantor [Centex], herein and its successors shall warrant and defend the title to the above described real estate to Grantee [House], [his] successors and assigns, against the lawful claims and demands of all persons claiming by,

---

1. House's complaint alleges he received a warranty deed from Centex. However, this allegation is contradicted by the deed, which he attached to the complaint. "A court should not accept as true allegations that are contradicted by other allegations in the complaint or exhibits attached to or incorporated in the pleading." *Am. Heritage Banco, Inc. v. McNaughton,* 879 N.E.2d 1110, 1115 (Ind.Ct. App.2008).

through or under Grantor but against none other.

(Appellant's App. at 18.) The covenant of warranty "is a future covenant which is not breached until the grantee is evicted from the property, buys up the paramount claim, or is otherwise damaged." *Outcalt v. Wardlaw,* 750 N.E.2d 859, 863 (Ind.Ct. App.2001).

▮▮▮ House alleged he was damaged because he incurred the costs of a quiet title action and lost two sales. The covenant of warranty, however, does not require the grantor to reimburse the grantee for a quiet title action instituted by the grantee. *See id.* at 863–64 (a lawful claim for which the grantor is liable is a successful claim asserted by a third party). Nor does the covenant of warranty allow House to recover for the loss of potential buyers. This may mean his title is not marketable, but the covenant of warranty is a promise to indemnify the grantee against lawful claims, *see id.*, not a guarantee of marketability. To allow House to seek damages from Centex for lost sales would be to add covenants not contained in his deed. Therefore, the trial court did not err by dismissing House's claim against Centex.

## 2. *Security Title's Motion to Dismiss*

▮▮▮ Security Title argues it did not have to disclose three of the liens because they were legally deficient. Security Title directs us to no authority or anything in its agreement with House that establishes as a matter of law Security Title was not required to disclose recorded liens it believed were legally deficient.

Nor can we determine at this stage that the liens were in fact legally deficient. Security Title notes that the American Acceptance and Aurora Elementary School liens were held against only one of the Wykoffs, and real property held by the entireties is immune to seizure and satisfaction of the individual debts of the husband or wife. *Mid–West Fed. Savings Bank v. Kerlin,* 672 N.E.2d 82, 85 (Ind.Ct. App.1996), *trans. denied* 683 N.E.2d 592 (Ind.1997). Therefore, if the property is held by the entireties, these liens did not attach to the property. *Id.* at 86. A husband and wife are presumed to hold real property as tenants by the entireties, Ind.Code § 32–17–3–1, but that fact has not been established at this stage of the proceedings, and it cannot be resolved against House.[2]

▮▮▮ Security Title also argues the Provident lien was subordinate to the Centex mortgage, *see* Ind.Code § 32–29–1–4 (purchase money mortgage has priority over prior judgment), and it expired during the pendency of this litigation anyway. *See* Ind.Code § 34–55–9–2 (liens on real property expire ten years after judgment is rendered). This argument also asks us to resolve factual issues against House.[3] Security Title argues the Hospital has not taken action to enforce its lien, but does not appear to deny that it could.

▮▮▮ Security Title suggests House should have put the amount of the judgment liens in escrow so he could close with one of his potential buyers. This asks us to assume such an arrangement would have been acceptable to a buyer. Furthermore, Security Title acknowledges this is,

---

**2.** House argues there may be scenarios where a lien against an individual spouse may attach to real property that is held or was previously held by tenants by the entirety; however, the facts are not before us, and we need not resolve the issue.

**3.** For example, a judgment lien can be executed after ten years on leave of court. I.C. § 34–55–1–2.

at most, an argument that House failed to mitigate his damages. Failure to mitigate does not bar an action; it only reduces damages. *Foster v. Owens,* 844 N.E.2d 216, 221 (Ind.Ct.App.2006) (mitigation is not an affirmative defense to liability, but "may reduce the amount of damages a plaintiff is entitled to after liability has been found"), *trans. denied* 860 N.E.2d 591 (Ind.2006).

Assuming, as we must, that House's allegations are true, he has stated a claim for relief. Therefore, the trial court erred by granting Security Title's motion to dismiss.[4]

### 3. *First American's Motion to Dismiss*

#### A. *House's Claim for Breach of Insurance Contract*

The policy First American issued to House insures

against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Unmarketability of the title;

4. Lack of a right of access to and from the land.

(Appellant's App. at 32.)

The coverage is subject to certain exclusions, one of which First American asserts is applicable: "Defects, liens, encumbrances, adverse claims or other matters . . . resulting in no loss or damage to the insured claimant." (*Id.* at 33.) First American advances arguments similar to those of Security Title: (1) the American

Acceptance and Aurora Elementary School liens were against only one of the Wykoffs; (2) the Provident lien was subordinate and has expired; and (3) the Hospital has not taken action to enforce the lien. Therefore, First American argues House has not suffered a loss. For the reasons discussed above, we cannot presume these liens are not enforceable against House.

■ Nevertheless, First American claims it is not required to pay anything to House unless and until a lien is enforced against him:

An insured of an indemnity contract suffers no loss for which it may recover until the insured is obliged to spend money as a result of the assertion of the title defect by one claiming a superior claim. To do otherwise would require an insurer of title to pay moneys pursuant to a policy even if the insured has not shown that it would suffer a loss, thereby creating a windfall to the insured who may never have to clear title.

(Appellee First American's Br. at 9.) First American's argument ignores the fact that House *has* had to clear his title. His allegations, taken as true, establish he had an unmarketable title. *See Humphries v. Ables,* 789 N.E.2d 1025, 1033–34 (Ind.Ct.App.2003) (marketable title is unlikely to be involved in litigation arising from problems of unclear title, such as liens); *Russell v. Walz,* 458 N.E.2d 1172, 1178 (Ind.Ct.App.1984) (marketable title is title a prudent person would accept and has no defects affecting the possessory title of the owner). Because buyers were unwilling to close on his property, House had to commence a quiet title action in order to sell the property and get a return on his investment. Insurance against unmarketable title would surely be illusory if

---

4. Security Title's brief also addresses negligence and statutory claims that House has not asserted in his amended complaint; therefore, we need not address those arguments.

the insured must wait for liens to be enforced or to lapse, when all the while the insured is unable to sell the property.

First American argues it offered to indemnify the potential buyers, and House himself could also have done so. Again, this requires us to assume the arrangement would be satisfactory to buyers, and is at most an argument that House failed to mitigate his damages. Therefore, the trial court erred by dismissing this count of House's complaint.

### B. *Damages under Ind.Code § 34–24–3–1*

The complaint alleges House is entitled to treble damages, attorney fees, costs, and loss of time under Ind.Code § 34–24–3–1, which provides these damages may be recovered when "a person suffers a pecuniary loss as a result of a violation of IC 35–34, IC 35–42–3–3, IC 35–42–3–4, or IC 35–45–9." House alleges First American committed code violations consisting of, but not limited to "those stated in Indiana Code 35–43–5–2 (item 3); Indiana Code 35–43–5–3(a)(2), (a)(4)(B), (a)(9); and Indiana Code 35–43–9." (Appellant's App. at 13.)[5] House's complaint merely lists these code sections and does not allege facts that would establish violations of these sections. These allegations are not sufficient to survive a motion to dismiss. *See Estate of Verdak v. Butler University*, 856 N.E.2d 126, 137 (Ind.Ct.App.2006) (affirming grant of motion to dismiss complaint for damages under I.C. § 34–24–3–1 where Butler merely quoted statutory language and did not allege facts that would establish a violation). The trial court did not err by dismissing House's claim for damages under Ind.Code § 34–24–3–1.

### C. *Unfair Claim Practice*

House's original complaint alleged First American committed several of the unfair claim settlement practices enumerated in Ind.Code § 27–4–1–4.5. First American argued the claim must be dismissed because that statute provides no private cause of action. *Guarantee Trust Life Ins. Co. v. Palsce*, 641 N.E.2d 1266, 1270 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* House's amended complaint restates this claim, only omitting the reference to Ind.Code § 27–4–1–4.5. He now argues he is stating

> an unfair claim practice civil tort claim as allowed by *Erie Ins. Co. [v. Hickman*, 622 N.E.2d 515 (Ind.1993) ] and uses the specific noted paragraphs from Indiana Code 27–4–1–4.5 to show which of the codified unfair practices that Wayne House is claiming that First American Title committed in this case.

(Appellant's Br. at 27.)

In *Erie*, our Supreme Court recognized "there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." 622 N.E.2d at 518. This duty "includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to

---

5. Ind.Code § 35–43–5–2 prohibits counterfeiting, forgery, and application fraud; it is not apparent what House means by "item 3." Ind.Code § 35–43–5–3 prohibits deception. The sections referred to specifically prohibit making a false or misleading written statement with intent to obtain property, employment, or an educational opportunity; selling, offering, or displaying for sale or delivering less than the represented quality or quantity of any commodity; and disseminating an advertisement that is false, misleading, or deceptive. Only one offense is stated in chapter 35–43–9; section 7 prohibits converting or misappropriating money received or held in a title insurance escrow account or receiving such money.

pressure an insured into settlement of his claim." *Id.* at 519.

House's complaint alleges First American:

1. Misrepresent[ed] pertinent facts or insurance policy provisions relating to coverages at issue.

2. Fail[ed] to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

\* \* \* \* \*

4. Refus[ed] to pay claims without conducting a reasonable investigation based upon all available information.

\* \* \* \* \*

6. [Did not attempt] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

\* \* \* \* \*

8. Attempt[ed] to settle a claim for less than the amount to which a reasonable individual would have believed the individual was entitled.

\* \* \* \* \*

14. Fail[ed] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromised settlement.

(Appellant's App. at 13.) Although these allegations track the language of Ind.Code § 27–4–1–4.5, if proven they could establish First American breached its duty to deal with House in good faith. House's complaint alleges there were four judgment liens on his property, First American insured against those liens, and it failed to clear his title or reimburse his losses.

First American correctly notes the denial of a claim, even if erroneous, is not necessarily a breach of the duty to deal in good faith. However, House's complaint fairly apprises First American that House is claiming denial of his claim was tortious for the reasons enumerated in his complaint. Although his complaint would be clearer if it were denominated as a claim of breach of duty to deal in good faith, his allegations are sufficient to survive a motion to dismiss.

## CONCLUSION

The trial court properly dismissed House's claim against Centex and his claim under Ind.Code § 34–24–3–1 against First American. However, the trial court erred by dismissing his claim against Security Title and the remaining claims against First American, and we remand for further proceedings on those claims.

Affirmed in part, reversed in part, and remanded.

KIRSCH, J., and RILEY, J., concur.