## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2019, 9:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Abraham Murphy
Abraham Murphy Attorney at Law, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Michael H. Michmerhuizen
Barrett McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Dusek and Berkshire Implement Co Inc,

*Appellants-Defendants,*

vs.

Berkshire Liquidating Company f/k/a Berkshire Implement Co., Inc.,

*Appellee-Plaintiff.*

April 8, 2019

Court of Appeals Case No. 18A-PL-1681

Appeal from the Cass Superior Court

The Honorable Rick Maughmer, Judge

Trial Court Cause No. 09D02-1612-PL-42

**Kirsch, Judge.**

[1] Thomas Dusek and Berkshire Implement Co Inc (collectively "Dusek")[1] appeal the trial court's ruling that found Dusek committed civil deception against Berkshire Liquidating Company ("BLC"), f/k/a Berkshire Implement Co., Inc., and that ordered Dusek to pay damages and attorney fees, raising the following issues:

I. Whether the trial court erred in finding that Dusek knowingly and intentionally made false or misleading statements with the intent to obtain BLC's property and in awarding the damages based on that finding;

II. Whether the trial court abused its discretion in awarding $46,724.58 in attorney fees to BLC; and

III. Whether the trial court erred in denying Dusek's motion for continuance.[2]

[2] BLC raises a cross-appeal issue, contending that this appeal should be dismissed because Dusek is in contempt.

[3] We affirm.

---

[1] On occasion, we will identify the Appellants separately as clarity requires. In those situations, we will refer to Appellant Dusek as "Dusek" and Appellant "Berkshire Implement Co Inc" as "Berkshire-2015," the designation the Appellants use in their brief.

[2] Dusek also challenges the trial court's conclusion that he committed fraud and slander of title. Because we can determine the validity of the trial court's judgment, including damages and attorney fees, by reviewing only Dusek's challenge to the trial court's conclusion that he committed civil deception under Indiana Code section 35-43-5-3, we do not address the issues related to fraud and slander of title.

## Facts and Procedural History

[4] In 1974, Clyde Berkshire ("Clyde" or "Clyde Berkshire") formed a Cass County Corporation called Berkshire Implement Company Inc., which later became known as "Berkshire Liquidating Company," which as we mentioned before, "BLC" for purposes of this appeal. *Appellants' App. Vol. 2* at 106. BLC owned a piece of real estate in Royal Center, Indiana. *Id.* Clyde ran BLC until 2015, when he decided to wind up the business and sell the real estate at an auction scheduled for August 10-11, 2015. *Id.* at 108. A few weeks before the auction, Dusek incorporated Berkshire Implement Company Inc, prompting Clyde to change the name of his corporation to Berkshire Liquidating Company. *Id.* at 94.

[5] Dusek showed up at the auction and tried to stop it. *Id.* at 55-56. He told the representatives of BLC that BLC had been dissolved and that he owned the rights to the name "Berkshire-Implement Co Inc.," *i.e.*, Berkshire-2015. *Id.* The BLC representatives were shocked by this information. *Id.* at 56. The auction proceeded, and Douglas Fox and Matthew Fox ("the Foxes") submitted the successful bid on the real estate with the parties agreeing in principle to the sale. *Id.* at 110, 171. No purchase agreement was signed that day. *Id.* at 129.

[6] On May 12, 2015, Dusek, as a representative of Berkshire-2015, filed an Affidavit of Interest in Real Estate ("the Affidavit")," in which he claimed that Berkshire-2015 "has an interest, right and claim that affects the title" of the real

estate. *Appellee's App. Vol. 2* at 20. The Affidavit also alleged that the Indiana Secretary of State had "permanently revoked" BLC's Certificate of Existence, thereby prohibiting BLC from transacting any business in Indiana and that under Indiana law a "dissolved corporation does not have the power to execute the conveyance of real estate" and that any such conveyance would be "void and [have] no effect." *Id.* at 21. Brian Morrill, President of Cass County Title, was later asked to provide title insurance for the real estate, but he declined because the Affidavit created a cloud on the title. *Appellants' App. Vol. 2* at 99. The Affidavit said nothing about Dusek's desire to protect the name "Berkshire Implement Co Inc". *Appellee's App. Vol. 2* at 20-22.

[7] On November 24, 2015, about seven months after the auction, BLC and the Foxes entered into a "Contract for Conditional Sale of Real Estate." *Ex. Vol. 3* at 25-35. The contract required the Foxes to pay monthly installments until insurable title could be provided to the Foxes. *Id.* at 26. The contract also provided that if BLC is unable to obtain title insurance, the Foxes may cancel the contract and receive a refund of their $5,000.00 down payment. *Id.* at 33.

[8] On December 1, 2016, BLC filed a complaint to quiet title and for declaratory relief and damages, alleging that Dusek, *inter alia*, committed civil deception, fraud, and slander of title. *Appellants' App. Vol. 2* at 17-24. Each claim rested on the Affidavit, in which Dusek had alleged an interest in the real estate. *Id.* at 21-22.

[9] On February 9, 2017, BLC filed a motion for partial summary judgment, requesting summary judgment only on the issue of whether Dusek had any right, title, or interest in the real estate. *Appellee's App. Vol. 2* at 2. On April 20, 2017, Dusek, in his personal capacity, filed a Stipulation of Disclaimer of Interest ("the Stipulation"), claiming that when he filed the Affidavit, he was acting only in his capacity as president of Berkshire-2015, not in his personal capacity. *Appellants' App. Vol. 2* at 59-60. However, the Stipulation did not disclaim Berkshire-2105's purported interest in the real estate. *Id.*

[10] On April 24, 2017, four days after Dusek filed the Stipulation, the trial court granted BLC's motion for partial summary judgment. *Appellee's App. Vol. 2* at 100. The trial court found, in part, that Dusek and Berkshire-2015 "do not dispute any legal argument made by [BLC], nor do [Dusek and Berkshire-2015] cite any legal authority or argument to support their contention that Berkshire-2015 acquired rights or an interest in the Real Estate." *Id.* at 104. Thus, the trial court found that the title to the real estate should be quieted in favor of BLC.[3] *Id.*

[11] As discovery proceeded, BLC sought to depose Dusek. The deposition was initially set for June 29, 2017, but BLC twice rescheduled the deposition at Dusek's request, with the parties finally settling on October 12, 2017 as the date

---

[3] Even though the summary judgment ruling intended to quiet title in BLC's favor, BLC still cannot deliver clear title to the Foxes because relatives of Clyde Berkshire filed a lis pendens action against the real estate in an action related to the estate of Clyde Berkshire. *Appellants' App. Vol.* 2 at 101; *Appellee's Br.* at 29 n.3.

for the deposition. *Id.* at 108. On October 11, 2017, at 3:48 p.m., less than twenty-four hours before the deposition, Dusek's lawyer emailed BLC's lawyer, stating that Dusek asked her to withdraw "effective immediately" and that she was "not authorized to submit any discovery responses or represent [Dusek] in a deposition." *Id.* at 192. The next day, Dusek failed to appear for the deposition in contravention of his subpoena. *Id.* at 110, 134.

[12] Because Dusek did not appear at the deposition, the trial court issued a rule to show cause order on October 18, 2017, set a hearing for November 9, 2017, and ordered Dusek to appear in person. *Appellants' App. Vol. 2* at 8. On November 8, 2017, new counsel filed a limited appearance for Dusek. *Id.* at 9. New counsel appeared telephonically for Dusek for the show cause hearing, but Dusek failed to appear. *Id.* Thus, the trial court issued a writ of body attachment for Dusek and set a cash bond of $10,000.00. *Id.*[4]

[13] On February 23, 2018, the trial court set a pre-trial conference for March 8, 2018 and encouraged Dusek's lawyer to file an unlimited appearance. *Appellee's App. Vol. 2* at 197. If counsel did not file an unlimited appearance, the trial court ordered Dusek and his lawyer to appear at a pretrial conference, or, alternatively, Dusek's lawyer was to certify that he advised Dusek that he would be bound by any dates set at the pretrial conference. *Id.* The trial court

---

[4] On November 14, 2017, the trial court entered judgment in favor of BLC and against Dusek for costs and expenses in the amount of $6,383.78 related to Dusek's the failure to appear for the deposition. *Appellee's App. Vol. 2* at 195.

also stated that the limited appearance of counsel would expire on May 1, 2018. *Appellants' App. Vol. 2* at 64. Dusek did not appear at the pretrial conference, and a bench trial was set for June 20, 2018. *Id.* On May 2, 2018, the trial court noted that Dusek's attorney was no longer Dusek's attorney of record as of May 1, 2018, pursuant to the trial court's February 23, 2018 order, and that Dusek would be proceeding pro se. *Id.* at 9; *Appellee's App. Vol. 2* at 197.

[14] On June 7, 2018, thirteen days before the scheduled trial date, Andrew David ("David") appeared as Dusek and BLC-2015's new counsel. *Id.* at 12. The same day, David filed a motion to continue the bench trial that had been set for June 20, 2018. *Id.*[5] In support, David stated that he had just been retained, that he needed time to ascertain the facts and consult with his clients, and that he had a previously scheduled vacation for the date of the bench trial. *Id.* at 72. The motion did not mention any medical conditions that Dusek may have been suffering or travel restrictions created by his illness. *Id.*[6] On June 11, 2018, the trial court denied the motion to continue. *Id.* at 12. That same week, BLC gave Dusek's new counsel documentation to support BLC's attorney fee request. *Id.* at 147.

---

5 On June 4, 2018, three days before Dusek's new counsel appeared and filed the motion for continuance, Dusek filed an unverified pro se Notice Regarding Trial Order, which advised the trial court that he was not prepared for trial and was seeking new counsel. *Appellants' App. Vol. 2* at 66-68. Dusek claimed he was residing in Europe at the time and that he had a progressive health condition that made it difficult to travel, that his health condition prevented him from researching and retaining counsel, and that he should have better information about his health prognosis in September 2018. *Id.*

6 On June 11, 2018, counsel for Dusek filed a reply to BLC's opposition to the motion to continue. *Appellants' App. Vol. 2* at 77. The reply, which was not verified, did mention Dusek's health problems. *Id.*

[15]    The bench trial occurred on June 20, 2018.  Dusek's attorney appeared, but Dusek did not.  *Id.* at 92.  BLC's counsel again provided Dusek documentation supporting its attorney fee request.  *Id.* at 147.  Because it was unclear whether this documentation was the same documentation that BLC had provided Dusek the week before, the trial court asked Dusek's counsel if he wanted to review the documents; Dusek's counsel said he did and that ten minutes would be sufficient.  *Id.*

[16]    On June 22, 2018, the trial court issued its final order, which stated, in part:

> This matter came before the court 20 June 2018 for hearing the balance of an action to quiet title and damages.  The court had granted partial summary judgment in this matter 24 April 2017, quieting title to the subject real estate in favor of [BLC]. . . . [T]he court finds as follows:
>
> . . . .
>
> 5. [Dusek and Berkshire-2015] did **k**nowingly and intentionally make a false or misleading statement with intent to obtain . . . [BLC's] real estate.
>
> 6. Indiana Code [section] 34-24-3-1 relating to treble damages and attorney fees is applicable to this case.
>
> 7. As a result of [Dusek and Berkshire-2015's] actions, BLC is awarded thirty-two thousand one hundred seventy-two dollars ($32,172.00) in damages against [Dusek and Berkshire-2015], joint and several. (bank fees $363.00, property tax $1,734.88, LP gas $1,177. 00, CPA fees $7,450.00, all multiplied by three).

8. As a result of [Dusek and Berkshire-2015's] actions, BLC is awarded forty-six thousand seven hundred twenty-four dollars and fifty-eight cents ($46,724.58) in attorney fees against the defendants, joint and several. (MS $983.00, JCM $10,560.00, BM $35,181.58).

. . . .

Therefore the judgment entered this date in favor of [BLC] and against [Dusek and Berkshire-2015] joint and several is $78,896.58 plus costs and statutory interest at the rate of eight percent.

*Id.* at 15-16. Dusek now appeals.

# Discussion and Decision[7]

[17] Because neither party requested special findings nor did the trial court make findings *sua sponte*, Dusek appeals from a general judgment. We will affirm a general judgment if it can be sustained by any legal theory consistent with the evidence. *Conseco Fin. Servicing Corp. v. Friendly Vill. of Indian Oaks*, 774 N.E.2d 87, 92 (Ind. Ct. App. 2002). We neither reweigh the evidence nor judge the credibility of witnesses but consider only the evidence most favorable to the judgment together with all reasonable inferences drawn therefrom. *Id*. Further,

---

[7]We find that Dusek has waived his appeal of the trial court's treble damage award for lack of cogent argument. *See Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind. Ct. App. 2016). His argument consists of one sentence: "The trial court's errors were further compounded when the trial court ordered treble damages, which are not supported by the evidence." *Appellants' Br.* at 11. Dusek challenges the trial court's purported award of punitive damages to BLC. Although BLC's complaint requested both treble damages and punitive damages, the trial court awarded only treble damages. *Appellants' App. Vol. 2* at 15, 2-23. Thus, there is nothing for us to review regarding punitive damages.

we presume the trial court correctly followed the law. *Id.* We will affirm a general judgment unless the uncontradicted evidence leads to a conclusion opposite that reached by the trial court. *Id.*

## I. BLC'S Cross Appeal

Before we address Dusek's claims, we first address BLC's cross appeal, which asks us to dismiss this appeal because Dusek is in "continued contempt." *Appellee's Br.* at 19-21. In support, BLC observes that Dusek failed to appear at a deposition, even though BLC had twice rescheduled the deposition at Dusek's request and that Dusek had been subpoenaed for the deposition. BLC also cites Dusek's failure to appear in court to show cause why he should not be held in contempt for failing to appear at the deposition. Because Dusek failed to appear, the trial court issued a writ of body attachment. *Id*. at 9; *Appellee's App. Vol. 2* at 194.[8] BLC contends that by these actions, Dusek has willfully defied the mandates of the trial court and should not now ask us to compel the trial court to "do his bidding when he himself has repeatedly flouted the authority of the [t]rial [c]ourt." *Appellee's Br.* at 21.

In support, BLC cites *Michael v. Michael,* 253 N.E.2d 261 (Ind. 1969), where the trial court transferred custody from the father to the mother. After father initiated his appeal of the change-of-custody order, he removed the child from

---

[8] As of the date that BLC filed its brief, the writ of body attachment was still active. *Appellee's Br.* at 5, 18, 20-21.

the state, and, soon after, the trial court found him in contempt. *Id.* at 262. The Indiana Supreme Court dismissed the father's appeal, not only because he defied the trial court's order but also, because by absenting himself from the jurisdiction, he rendered any judgment by the Supreme Court ineffectual:

> Here we have the appellant in the defiant position of removing himself and the child from the state in violation of a court order and still requesting appellate review from this Court. We can hardly be expected to undertake review while appellant reserves to himself the power to place himself beyond the law and render wholly ineffectual any adverse determination we might make.

*Id.* at 262.

[20] We deny BLC's request to dismiss Dusek's appeal. We prefer to resolve cases on substantive, not procedural grounds. *In re D.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574, 580 (Ind. 2017). Because Dusek's contemptuous acts, though troublesome, do not impinge on the substantive issues of this case, we address Dusek's claims on the merits, to the extent that he has properly preserved and argued those issues on appeal.

## II. *Deception – Intent to Obtain the Real Estate*

[21] Dusek argues that the trial court erred in finding that he committed civil deception under Indiana Code section 35-43-5-3 ("the Deception Statute") because even if the evidence shows his statements in the Affidavit were

knowingly or intentionally false,[9] the evidence does not show that he made the statement with the "intent to obtain the real estate." *Appellants' Br.* at 16.

[22] The Deception Statute, provides in part: "(a) A person who: . . . (2) knowingly or intentionally makes a false or misleading written statement with *intent to obtain property* . . . commits deception, a Class A misdemeanor." Ind. Code § 35-43-5-3(a)(2) (emphasis added). The Deception Statute allows treble damages for a person suffering pecuniary loss. *Heartland Res., Inc. v. Bedel*, 903 N.E.2d 1004, 1008 n.2 (Ind. Ct. App. 2009). A criminal conviction under the Deception Statute is not required to recover in a civil action. *Id.* A plaintiff need only prove the elements of the underlying crime by a preponderance of the evidence. *Id.* Intent may be proven by circumstantial evidence. *McCaskill v. State*, 3 N.E.3d 1047, 1050 (Ind. Ct. App. 2014).

[23] In arguing there was no evidence that he intended to obtain the real estate, Dusek observes that he did not file a complaint to foreclose, quiet title, or gain possession of the real estate. He also claims there is no evidence that he contacted BLC to obtain the real estate, money, or anything of value from BLC. Dusek characterizes his filing of the affidavit as "misguided" but denies that he "intended to do harm to [BLC]." *Appellants' Br.* at 17.

[24] Two cases guide our analysis. First, in *American Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1118 (Ind. Ct. App. 2008), we found that a

---

[9] Notably absent from Dusek's brief is any argument that his statements in the Affidavit were not false.

lender made legally sufficient allegations to let its civil deception claim proceed, where the lender had claimed that borrowers made false statements in loan applications in order to obtain loans from the financial institution. We found that such actions would establish intent to obtain property. *Id*. at 1118.

[25] Second, *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 976 F. Supp. 2d 1020 (S.D. Ind. 2013), also addressed what constituted intent to obtain property under the Deception Statute. In that case, the District Court found that a complaint made a legally sufficient allegation about using false written statements to obtain property, where the complaint alleged that a corporate president had lied in a written settlement agreement by stating that his company still owned the intellectual property rights to a certain gun, when in fact it did not. *Id.* at 1034. The District Court ruled that this false statement constituted a statement with intent to obtain property, specifically part or all of the $300,000.00 the corporate president had procured during the negotiations that led to the written settlement agreement. *Id.* at 1035. In allowing the lawsuit to proceed, the District Court rejected the corporate president's argument that there was no evidence of his intent to obtain property because the $300,000.00 would not go to him but to his employer:

> "The [corporate president] cite[s] no authority for the proposition that a corporate officer cannot be guilty of deception under this statute when the pecuniary benefits accrue to the company he heads rather than himself, and it stands to reason that [the corporate president] benefited at least indirectly from [the] . . . $300,000[.00] settlement windfall."

*Id.*

[26] Here, the Affidavit establishes that Dusek intended to obtain the real estate. The Affidavit recounts that, at the auction, one of Dusek's representatives made a false statement to the auctioneers, telling them that the Indiana Secretary of State had "permanently revoked" and "administratively dissolved" BLC's Certificate of Existence/Authorization, thus preventing BLC from conducting any business in Indiana, and if BLC sold the real estate, any such sale would be "void and has no effect." *Appellee's App. Vol. 2* at 21. Dusek made the same allegations to the representatives of BLC. *Appellants' App. Vol.* 2 at 52-53. The Affidavit further evinces Dusek's intent to obtain the real estate as it made false statements by stating that Dusek had an interest, right, and claim that affects the title of the real estate. *Appellee's App. Vol. 2* at 21. Further underscoring Dusek's intent to obtain the real estate, and not a desire to simply protect the corporate name "Berkshire Implement Co., Inc.," is that the Affidavit said nothing about protecting the corporate name but instead focused solely on Dusek's rights to "enforce [his] interest, rights and claims against the title of the Real Estate." *Id.* at 22. Thus, the trial court justifiably inferred that Dusek intended to obtain the real estate. *See McCaskill*, 3 N.E.3d at 1050.

[27] Dusek's Stipulation does not persuade us to the contrary. The Stipulation disclaimed only Dusek's personal interest in the real estate; it did not disclaim Berkshire-2015's interest in the real estate. *Appellants' App. Vol. 2* at 59-60. Further, as sole officer and employee of Berkshire-2015, it stands to reason that Dusek would still benefit, at least indirectly, from the claim on the real estate,

even after he filed the Stipulation. *Id.* at 68. We liken Dusek's position as a stakeholder to that of the corporate president in *Heckler and Koch,* who claimed there was no evidence of intent to obtain property because the $300,000.00 he negotiated in the settlement agreement inured to his employer, not himself personally. The District Court's rejection of this argument bears repeating as it fits the circumstances here and thus undercuts Dusek's argument that the Stipulation shows that he did not intend to obtain the real estate:

> The [corporate president] cite[s] no authority for the proposition that a corporate officer cannot be guilty of deception under this statute when the pecuniary benefits accrue to the company he heads rather than himself, and it stands to reason that [the corporate president] benefited at least indirectly from [the] . . . $300,000[.00] settlement windfall.

*Heckler & Koch*, 976 F. Supp. 2d at 1035.

[28] This analysis is especially fitting here given Dusek's total control of Berkshire-2015. He was the sole officer and employee of Berkshire-2015. *Appellants' App. Vol. 2* at 68. While it may have been a matter of speculation about how much the corporate president in *Heckler & Koch* might have benefited from the $300,000.00 he negotiated in settlement talks for his employer, it is much less speculative that Dusek would benefit *personally* from the Affidavit's claim that he held an interest in the real estate, even after he filed the Stipulation. Thus, it was reasonable for the trial court to conclude that Dusek made false written statements with the intent to obtain the real estate.

[29] Finally, Dusek is correct that he did not file a complaint to foreclose his interest in the real estate or contact BLC to obtain the real estate or anything of value from BLC. We reject this argument as an impermissible request to reweigh the evidence. *See Conseco Fin. Servicing Corp.*, 774 N.E.2d at 92. Therefore, the evidence sufficiently established that Dusek intended to obtain the real estate and, thus, that he committed civil deception under Indiana Code section 35-43-5-3.

### III. Attorney Fees

[30] Dusek contends the trial court abused its discretion in awarding $46,724.58 in attorney fees to BLC. He faults the trial court for failing to make findings, which he claims are required by *Fortner v. Farm-Valley Applewood Apartments,* 898 N.E.2d 393 (Ind. Ct. App. 2008) and *In re Inlow,* 735 N.E.2d 240 (Ind. Ct. App. 2000). He claims the trial court was required to find whether the fees were reasonable under the criteria for reasonable fees found in Indiana Professional Rule of Conduct 1.5(a). Dusek also contends that some of the attorney fees assessed actually arose in a case involving the estate of Clyde Berkshire, in which BLC's law firm had also appeared. Dusek further alleges that the affidavit for attorney fees submitted by BLC's lawyer failed to provide the hours worked.

[31] The award or denial of attorney's fees lies within the sound discretion of the trial court and, absent an affirmative showing of error or abuse of discretion, we must affirm the trial court. *Malachowski v. Bank One, Indianapolis, N.A.,* 682 N.E.2d 530, 533 (Ind. 1997); *Woude v. First Midwest Bank*, 45 N.E.3d 847, 851-

52 (Ind. Ct. App. 2015). We review both the decision to award attorney fees as well as the amount of the fee, which must be supported by the evidence. *City of Jeffersonville v. Envtl. Mgmt. Corp.,* 954 N.E.2d 1000, 1013 (Ind. Ct. App. 2011), *trans. Denied*. A trial court shall award only those attorney fees that are reasonable. *Woude*, 45 N.E.3d at 852. The Indiana Rules of Professional Conduct provide guidance as to the factors to consider in assessing the reasonableness of attorney fees. *In re Order for Mandate of Funds,* 873 N.E.2d 1043, 1049 (Ind. 2007); *see also Woude*, 45 N.E.3d at 852.

[32]     Dusek has waived the issue of his attorney fees because he makes only general claims about the award of attorney fees. He does not specify which fees are inappropriate and does not explain why they are inappropriate. He has thus failed to make a cogent argument and has waived this claim. *See Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind. Ct. App. 2016); *see also New v. Estate of New,* 938 N.E.2d 758, 763 (Ind. Ct. App. 2010) ("We will not conduct research to remedy deficiencies in the presentation of the case before this court."). We will not speculate about Dusek's specific grounds for relief from the trial court's attorney fee award.

[33]     Waiver notwithstanding, the trial court did not abuse its discretion in awarding $46,724.58 in attorney fees to BLC. Dusek cites no authority for the proposition that a trial court must make findings to support its attorney fee award if neither party has requested findings. The cases that Dusek cites are distinguishable. In *Fortner*, we reversed and remanded for a calculation of attorney fees because there was no evidence regarding the hours worked or the

hourly rate. 898 N.E.2d at 400. In *Inlow*, the parties requested findings pursuant to Indiana Trial Rule 52. 735 N.E.2d at 246. Moreover, the trial court in *Inlow* may or may not have used a multiplier based upon the complexity of the case. *Id.* at 257. We held that where the parties requested findings and where the case was complex, the trial court's order did not provide enough information to explain how it calculated attorney fees. *Id.* Here, neither party requested findings, nor did the trial court use a multiplier is assessing fees.

[34] Moreover, at the bench trial, the trial court considered the alleged deficiencies in BLC's proposed fees that Dusek alleges here, including his claims that some of BLC's fees actually arose from a different case involving the estate of Clyde Berkshire, and that the affidavit for attorney fees submitted by BLC's lawyer failed to provide the hours worked. Dusek fails to acknowledge this, and his challenge of the attorney fee award is not well taken. His failure to acknowledge this evidence violates Indiana Appellate Rule of Procedure 46(A)(6)(b), which requires a party to present facts in accord with the appropriate standard of review. Dusek was free, of course, to argue that despite this evidence, the trial court's attorney fee award was an abuse of discretion. However, we find no abuse of discretion in the trial court's disposition of the attorney fee issue, and we affirm the trial court's attorney fee award.

## IV.   *Continuance*

[35] Dusek alleges that the trial court abused its discretion in denying his motion for continuance, which he filed thirteen days before trial, because he had just

retained new counsel, who needed time to prepare for trial, including time to receive and review documents that BLC contended would support its attorney fee request. *Appellants' App. Vol. 2* at 72. New counsel also requested a continuance because he had previously scheduled to be on vacation on June 20, 2018, the date of the bench trial. *Id.* Dusek also argues that he was prejudiced by the denial of his motion for continuance because poor health prevented him from attending the bench trial.

[36] We review a trial court's decision to grant or deny a motion to continue for an abuse of discretion. *Powers v. Blunck*, 109 N.E.3d 1053, 1055 (Ind. Ct. App. 2018). We may find an abuse of discretion when the moving party has shown good cause for granting the motion yet the trial court has still denied the request. *Id.* "However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial, and the withdrawal of an attorney does not automatically entitle a party to a continuance." *Troyer v. Troyer*, 867 N.E.2d 216, 219 (Ind. Ct. App. 2007) (internal citations omitted). Whether good cause exists is a fact-specific inquiry that requires us to review the circumstances when the motion was filed and the reasons offered to support the motion. *Id*. "We also consider whether the record demonstrates dilatory tactics on the part of the movant designed to delay coming to trial." *F.M. v. N.B.*, 979 N.E.2d 1036, 1041 (Ind. Ct. App. 2012).

[37] Here, the trial court did not abuse its discretion in denying Dusek's motion for continuance. First, Dusek filed the motion thirteen days before trial, and the trial court denied it eleven days before trial, giving Dusek's new attorney more

than one week to prepare for trial. It would have been reasonable for the trial court to conclude that this was sufficient time to prepare for trial. *See Sheron v. State*, 553 N.E.2d 1200, 1201 (Ind. 1990) (trial court did not abuse its discretion in denying defendant's motion for continuance to give counsel one week to prepare for trial).

[38] Second, the trial court did not abuse its discretion in denying the motion for continuance because it could have reasonably concluded that Dusek's actions during the litigation were dilatory tactics designed to forestall the trial. *See F.M.*, 979 N.E.2d at 1041. Dusek twice asked BLC to reschedule Dusek's deposition. The day before the deposition, Dusek told his attorney to stop all discovery and to withdraw from the case immediately. *Appellee's App. Vol. 2* at 108. Despite BLC's accommodations, Dusek defied a subpoena and did not appear at the deposition. *Id.* at 110, 134. Dusek also engaged in dilatory tactics by failing to appear at the rule to show cause hearing and at a pre-trial conference. *Appellants' App. Vol. 2* at 9. This behavior gave the trial court good reason to deny Dusek's motion for continuance on grounds that Dusek's actions were designed to delay the trial.

[39] Finally, the denial of the motion to continue was not an abuse of discretion because Dusek has failed to demonstrate prejudice. He presents no evidence or argument to explain how he was prejudiced by not being able to attend the bench trial or how his attorney's preparation for trial was prejudiced, other than his claim that the denial of the continuance request hampered his attorney's ability to prepare for the attorney fee issue. As to the attorney fee issue, Dusek

makes a facially plausible argument, but he still fails to show prejudice. Though it appears that BLC was slow to respond to Dusek's request for documentation about its attorney fees, BLC did provide such documentation the week before the trial and provided documentation again at trial. *Appellants' App. Vol. 2* at 147. When it was not clear whether the documents regarding fees produced at trial were identical to the documents provided the week before, the trial court recessed the trial to give Dusek's counsel time to review the records. Once the trial recommenced, Dusek's counsel thoroughly cross-examined BLC's lawyer on his attorney fee affidavit and supporting documentation. Thus, Dusek has failed to show that the denial of his motion for continuance prejudiced his attorney's ability to challenge BLC's proposed attorney fee award. Accordingly, the trial court did not abuse its discretion in denying Dusek's motion for continuance.

[40] Affirmed.

Riley, J., and Robb, J., concur.