**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 13 2013, 8:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY E. STUCKY**
Blume, Connelly, Jordan, Stucky & Lauer, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**DAVID E. COREY**
**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) |
| T.B., M.B., and L.B., (Minor Children), | ) ) |
| AND | ) ) |
| J.B., (Father), | ) ) |
|   Appellant-Respondent, | ) ) |
|     vs. | )   No. 02A03-1207-JT-336 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
|   Appellee-Petitioner. | ) ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable William L. Briggs, Senior Judge
Cause Nos. 02D08-1111-JT-173, 02D08-1111-JT-175 & 02D08-1111-JT-176

**February 13, 2013**

**VAIDIK, Judge**

## Case Summary

J.B. ("Father") appeals the involuntary termination of his parental rights to his children, T.B., M.B., and L.B. Concluding that the trial court's findings failed to satisfy the requirements of Indiana Code section 31-35-2-4(b), we reverse the court's judgment as to Father and remand with instructions that the trial court enter additional findings to support its judgment.

## Facts and Procedural History

Father is the biological father of T.B., born in September 2007, M.B., born in July 2008, and L.B., born in December 2009.[1] In January 2010, the local Allen County office of the Indiana Department of Child Services ("ACDCS") took the children into emergency protective custody following an episode of domestic violence involving Mother, Father, and the maternal grandparents.[2] The incident, which occurred in the family home in the presence of the children, resulted in Father being arrested on battery charges and both grandparents being transported to the hospital for medical treatment

---

[1] Before the underlying proceedings, Father executed paternity affidavits for T.B., M.B., and L.B. *See* State's Ex. 10-12.

[2] A fourth child, Ju.R., was also taken into emergency protective custody by ACDCS. Father, however, is not the biological father of this child. Ju.R. is therefore not subject to this appeal. In addition, we observe that the trial court terminated the children's biological mother's parental rights to all four children in its May 2012 termination order. Because Mother does not participate in this appeal, our decision today does not affect the trial court's termination order as to Mother. In addition, we limit our recitation of the facts to those pertinent solely to Father's appeal of the trial court's judgment terminating his parental rights to T.B., M.B., and L.B.

because Father had broken the grandmother's nose, "bloodied" her eye requiring twelve stitches, and repeatedly "stomp[ed]" the grandfather's head "into the floor." Tr. p. 46.

Several days later, ACDCS returned the children to Mother's care after she agreed to abide by a safety plan which provided, in part, that neither Mother nor the children would have any contact with Father. ACDCS also filed petitions alleging that T.B., M.B., and L.B. were children in need of services ("CHINS"). In February 2010, ACDCS learned that Mother had taken the children to Angola, Indiana, where the family was living with Father in a hotel. A writ for removal of the children from Mother's care was issued because Mother had violated the terms of the safety plan. When ACDCS attempted to remove the children, however, the family could not be located.

Based on Father's previous comments that he was going to "make it worth his while to go to prison and kill everyone," ACDCS feared for the safety of Mother and the children. *Id.* at 56. ACDCS therefore conducted "extensive searches" for the family in Indiana, Michigan, Illinois, and Ohio, but the searches were unsuccessful. *Id.* ACDCS also filed missing persons reports on Mother and all the children.

In June 2010, law enforcement officers in Arkansas responded to a domestic dispute call involving the parents and during the encounter determined that Mother and the children were missing persons. The children were taken into protective custody, returned to Indiana, and placed in foster care. Mother thereafter admitted to the allegations in an amended CHINS petition in September 2010 and the children were so adjudicated.

3

During a hearing in December 2010, Father admitted that the children were CHINS, and the trial court proceeded to disposition.[3] The trial court then entered dispositional orders formally removing the children from Father's legal care and custody. The trial court's dispositional orders also incorporated a Parent Participation Plan ("PPP") which directed Father to successfully complete a variety of tasks and services designed to address his parenting deficiencies. Among other things, Father was ordered to: (1) refrain from all criminal activity; (2) maintain clean, safe, and appropriate sustainable housing at all times upon release from the Indiana Department of Correction ("IDOC"); (3) enroll in, successfully complete, and benefit from anger management, drug and alcohol, and parenting classes while incarcerated if available; (4) obtain and maintain suitable employment upon release from the IDOC; (5) obey the terms of his parole upon his release from incarceration; and (6) follow the rules of the no-contact order.

Father remained incarcerated until May 2011. Although Father participated in substance-abuse, anger-management, and parenting classes while incarcerated, within the first several months of his release, Father was facing new battery and drug-related charges. This renewed criminal activity resulted in Father's arrest and re-incarceration for violating the conditions of his parole. As a result, Father remained unavailable to care for the children for all but approximately three to five months of the underlying CHINS case.

ACDCS eventually filed amended petitions under separate cause numbers seeking the involuntary termination of Father's parental rights to all three children in December

---

[3] At the time of the December 2010 dispositional hearing, Father was incarcerated and participated in the hearing telephonically.

4

2011. A two-day consolidated evidentiary hearing on the termination petitions was held in March 2012. During the hearing, ACDCS presented considerable evidence regarding Father's significant criminal history, ongoing incarceration, and failure to benefit from the anger-management and substance-abuse classes he participated in while incarcerated, as evidenced by his subsequent arrests and re-incarceration in the summer and fall of 2011. Father, on the other hand, presented uncontroverted evidence demonstrating that he had maintained regular contact with ACDCS throughout the underlying proceedings despite his incarcerations, completed nearly all the court-ordered reunification services including a psychological evaluation, parenting classes, anger-management classes, and was only eight hours short of completing the third phase of a substance-abuse counseling program. Father also informed the trial court that he had obtained his GED while incarcerated, was scheduled to be released from incarceration in July 2012, and had already secured housing for himself and the children upon his release. Finally, Father testified that he was no longer in a relationship with Mother, could not remember the last time he spoke with her, and was unaware of her current whereabouts.

At the conclusion of the termination hearing, the trial court took the matter under advisement. In May 2012, the court issued its judgment terminating Father's parental rights to all three children. Father now appeals.

**Discussion and Decision**

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of

5

his or her children is 'perhaps the oldest of the fundamental liberty issues.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Indeed[,] the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb Cnty. Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). Nevertheless, parental rights are "not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights." *Id.* (citing *In re D.D.*, 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), *trans. denied*). Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.* The purpose of terminating parental rights, however, is not to punish the parent, but to protect the child. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *D.D.*, 804 N.E.2d at 265. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Here, the trial court made specific findings and conclusions in its termination order. When a trial court enters specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). In deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *L.S.*, 717 N.E.2d at 208; *see also Bester*, 839 N.E.2d at 147.

In Indiana, before parental rights may be involuntarily terminated, the State is required to allege and prove, among other things:

> (B)    that one (1) of the following is true:
>
> > (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)   There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)    that termination is in the best interests of the child; and
>
> (D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).[4] ACDCS has the burden of pleading and proving each element of Indiana Code § 31-35-2-4(b)(2) by clear and convincing evidence before the trial court can terminate parental rights. *See also In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2 (2008)).

Father's allegations of error focus solely on subsections 4(b)(2)(B) and (C) of the termination statute set forth above. Specifically, Father asserts that he is entitled to reversal because the trial court's judgment does not comport with Indiana's termination statute in that the "only finding of relevance upon which the court can rely upon in support of its termination order is set forth in subparagraph (d) of its orders wherein it

---

[4] Indiana Code section 31-35-2-4 was amended by Pub. L. No. 48-2012 (eff. July 1, 2012). The changes to the statute became effective after the filing of the termination petition involved herein and are not applicable to this case.

found that Father is either unable or unwilling to provide a stable and domestic[-]violence[-]free home for the children." Appellant's Br. p. 15. Father goes on to assert that although this finding "is admittedly a relevant and valid factor for the court's consideration in either the reunification of a family or the termination of a parent-child relationship, this court's singular finding fails to take into consideration the significant and substantial evidence presented at trial of Father's compliance with and/or successful completion of the numerous provisions" of the PPP. *Id.*

Our review of the trial court's judgments[5] reveals that although the court made multiple specific findings as to whether the conditions resulting in the removal of the children were likely to be remedied in the future, the great majority of these findings simply detailed the circumstances surrounding the initial removal of the children, or they related solely to Mother. In addition, although the trial court made other findings that Mother and Father had a "history of domestic violence" and that Father had a "history with alcohol abuse" and a "prior history" with ACDCS in which an incident of neglect was substantiated as to one of the children in 2009, these added findings, while relevant, speak solely to Father's past conduct and fail to acknowledge whether the conditions necessitating removal and continued placement outside Father's care had been remedied. Appellant's App. p. 2.

---

[5] For clarification purposes, we note that the trial court issued judgments under separate cause numbers pertaining to each of the children in terminating Father's parental rights. Because all three judgments contain nearly identical language, apart from certain identifying information contained in the heading, we cite to only one judgment throughout this opinion.

Apart from the aforementioned findings detailing Father's past conduct, the only remaining specific finding relevant to Father is as follows: "(d) [Father] and [Mother] are unable or unwilling to provide a stable and domestic[-]violence[-]free home for [the children]." *Id.*[6] Moreover, as for the "best interests" prong of our termination statute found in subsection 4(b)(2)(C), the trial court's termination order contains the single conclusory finding: "Termination is in the best interest of the child[ren] in that the parents have shown by their actions an inability or unwillingness to adequately provide for and care for the child[ren]." *Id.* at 3.

Termination of parental rights is of such importance that we must be convinced the trial court has based its judgment on proper considerations. *See*, *e.g.*, *Parks v. Delaware Cnty. Dep't of Child Servs.*, 862 N.E.2d 1275, 1280-81 (Ind. Ct. App. 2007). Unfortunately, we cannot make such a determination based on the trial court's findings set forth above. Although Father's past parental shortcomings were thoroughly addressed in the trial court's findings of fact, the court failed to make any findings regarding Father's fitness to care for the children at the time of the termination hearing. Nor did the trial court make a determination as to the credibility of Father's testimony of changed conditions and completed reunification goals. As such, the trial court's focus on historical conduct, absent any factual findings as to Father's current circumstances or evidence of changed conditions, is akin to terminating parental rights in order to punish the parent. *See*, *e.g.*, *In re CM*, 960 N.E.2d 169, 175 (Ind. Ct. App. 2011).

---

[6]Although the trial court also specifically found that Father failed to establish paternity for the children, ACDCS concedes on appeal that, contrary to the trial court's finding (m), Father did establish paternity of the children "by executing paternity affidavits." Appellee's Br. p. 10.

Indiana Code section 31-35-2-4(b)(2) sets forth the specific requirements which must be alleged and proved by clear and convincing evidence in order to involuntarily terminate a parent-child relationship. Although the trial court was not statutorily required to make specific findings in the underlying termination case,[7] "once the trial court walks down the path of making findings, it is bound under Indiana Trial Rule 52(A) to make findings that support the judgment." *Parks*, 862 N.E.2d at 1281; *see also In re Estate of Inlow*, 735 N.E.2d 240, 250 (Ind. Ct. App. 2000) (stating that special findings must contain the ultimate facts from which a trial court has determined the legal rights of the parties). Moreover, we are bound by the findings of the trial court on the issues covered and are not at liberty to look to other evidence to support its judgment. *See generally Parks*, 862 N.E.2d at 1280.

Based on the foregoing, we conclude that the trial court's judgment simply does not provide us with reasonable assurances that ACDCS proved all of the statutory dictates of Indiana Code section 31-35-2-4(b)(2) by clear and convincing evidence as they relate to Father. Moreover, our review of the record in its entirety yields evidence that could support either outcome as to Father, yet we are in no position to weigh such evidence or to attempt to read the trial court's mind in regard to its findings of fact. Accordingly, because the findings are deficient, we are constrained to reverse the judgment of the trial court terminating Father's parental rights to T.B., M.B., and L.B.,

---

[7] Indiana Code section 31-35-2-8 was amended by Pub. L. No. 128-2012 (eff. July 1, 2012) and now requires trial courts to "enter findings of fact that support the entry of the conclusions" required to either terminate a parent-child relationship or to dismiss the termination petition. *See* Ind. Code § 31-35-2-8. The changes to the statute, however, became effective after the issuance of the termination order involved herein and thus are not applicable to this case.

and remand this cause to the trial court for additional proper findings that support its judgment.

Reversed and remanded with instructions.

BAILEY, J., and BROWN, J., concur